INGRAHAM, J.
The city of New York instituted proceedings for the opening of a portion of 116th street in the city of New York and commissioners of estimate and assessment were appointed under the provisions of section 964 of the consolidation act. The commissioners have made their report, by which they have allowed the respondent, the New York Hospital, the sum of $54,-533.40 for certain land included in the bed of the street; and from an order confirming that report certain of the owners of property that were assessed have appealed.
The commissioners, in making their award, have evidently allowed the New York Hospital the full value of the land taken, subject to no easement either to the public or in favor of any abutting owner; and the sole question presented is whether the commissioners adopted a correct principle in making this award, and that depends upon whether the New York Hospital owned this strip of land, the value of which has been awarded to it by the commissioners, in fee, free from any easement or right of way. If such an easement existed, we think that the principle that the commissioners adopted was wrong, and that the award should have been the value of the property, subject to the easement.
*102 It is now settled in this state that one holding an easement in a strip of land which entitles him to have maintained as a street or road sustains no damage in consequence of a taking of the fee of such road or street as a street or highway. After it is thus taken and maintained by the public authorities, the abutting owner’s easement still remains unimpaired. He has all the right to the road or highway that he had before enjoyed, and no property of his is taken by the proceeding. Thus, in the case of City of Buffalo v. Pratt, 131 N. Y. 299; 43 St. Rep. 278, it was expressly held that the owner who does not own the fee of the land in the street has no right to compensation upon the taking of the street under legislative or municipal sanction for a public street, so long as the fee of the street is held by the public or municipal authorities, and no use is made that will obstruct free passage upon the street, or amount to a nuisance, or deprive the owner of the easement of the enjoyment of the easements of light,i air, and access. Under this proceeding, the city will acquire the fee of the property taken, to be held in trust, however, for use as a public street; and when the fee is thus acquired, neither 'the city nor the state has the power to devote such property to any use inconsistent .with that for which it is acquired and held, except upon payment of compensation to the abutting property owners. See Story v. Railroad Co., 90 N. Y. 173; Kane v. N. Y. E. Railroad Co., 125 id. 164; 34 St. Rep. 876. The New York Hospital was the owner of the fee of the land taken, and was entitled to be paid its value upon this proceeding. Under section 970 of the consolidation act, the commissioners were required to make a just and equitable estimate and assessment of the loss and damage, if any, over and above the benefit and advantage to the respective owners, lessees, parties, and persons, respectively entitled unto or interested in the lands, tenements, hereditaments, and premises so required for the purpose of opening said street. It is the- property *>wned by the New York Hospital that is to be valued, and if such property is subject to any easement either to the public or to an - individual, the award should be for the value of the property subject to such easement, as such easement is not in this proceeeding taken or appropriated. The one question that we have to determine, therefore, is whether or not this property of the New York Hospital is subject to any easement either to the public or to any abutting owner. -
There was no dispute as to the facts before the commissioners. It appeared that, upon the plan of the city laid out under the provisions of the Laws of 1807, 116th street (the street in question) was laid out as a public street, as was also 11th avenue, running at right angles to 116th street. In 1818, after the filing . of that plan laying out this street and -avenue, by a deed dated March 27, 1818, and recorded April 9, 1818, the New York Hospital acquired a large piece of property, and subsequently entered into possession of the property thus acquired, erected upon it a hospital for insane patients, and has remained in exclusive and uninterrupted possession and enjoyment of such property to the present-time. Subsequently, 11th avenue was opened through *103 the property; a id at the time of the conveyance to Oarrigan hereafter mentioned, such avenue was a public street, the fee of which had been acquired under the act of 1807, and such street was maintained by the city of Hew York as an open public street. 116th street, however, had never been opened or used as a street, but the portion of it in question was inclosed by a substantial inclosure, and occupied by the Hew York Hospital. The south boundary line of this property thus acquired by the Hew York Hospital crossed 116th street as laid out on the plan of the city diagonally, running in a northwestly and southeasterly direction, and struck the north boundary of 116th street 176 feet 2 inches west of lltli avenue; the hospital thus owning a piece of ground to the south of 116th street, as laid out, about 57 feet 7 inches upon 11th avenue, and 176 feet 2 inches upon the southerly boundary of 116th street, as laid out.
One Andrew Oarrigan appears to have been the owner of the piece of property to the south of that owned by the Hew York Hospital, and this piece of land to the south of 116th street by the Hew York Hospital would be a portion of four lots upon the southwest corner of 116th street and 11th avenue, being a portion of two lots on the avenue and two lots upon the street, as those lots were laid out upon the map of the city.
By a deed dated October 25, the Hew. York Hospital conveyed this parcel of land south of 116th street to the said Oarrigan, by a deed which the appellants claim subordinated the property of the Hew York Hospital in the street to an easement. It is clear from the examination of the property that this conveyance to Oarrigan was for the purpose of squaring out his property, so that he should have the title to all land on the southwest corner of 116th street and 11th avenue. The consideration of that conveyance was one dollar, and there is no evidence that the hospital received any other consideration than that named in the deed. The deed was the usual full covenant warranty deed, the piece of land conveyed being described as— “Beginning at a point on the southerly line of One Hundred and Sixteenth street, distant one hundred and seventy-six (176) feet two (2) inches westerly from a point on the westerly side of Eleventh avenue, where the southerly line of One Hundred and Sixteenth street intersects the westerly side of Eleventh avenue, and running from the said first-mentioned point easterly along said southerly side of One Hundred and Sixteenth street one hundred and seventy-six (176) feet two (2) inches, to said point of intersection of said southerly line of One Hundred and Sixteenth street with said westerly side of Eleventh avenue; thence southerly, along said westerly line of Eleventh avenue, fifty-one (51) feet seven (7) inches; thence northwesterly, along the center of a stone wall fifty-five (55) feet, to a point distant from said southerly line of One Hundred and Sixteenth street on a straight line parallel to the westerly line of said Eleventh avenue, twenty-eight (28) feet six (6) inches; thence northwesterly, along the center of said stone fence, twenty-four (24) feet four (4) inches, to a point distant from, said southerly line of One Hundred and Sixteenth street, in a *104 straight line parallel to said westerly line of Eleventh avenue, twenty-one (21) feet nine (9) inches; and thence northwesterly, along the center of said stone fence, one hundred and five (105) feet two (2) inches, to the said point or place of beginning.”
Immediately after that conveyance, the hospital proceeded to build a substantial fence on the southerly side of 116th street, as ' laid out to 11th avenue, and from that time to the present has remained in the exclusive possession of the property, using it solely and exclusively for its own purposes. No claim was ever made by either the grantee in that deed or the public to any portion of 116th street owned by the hospital, nor was the same used in any way as a street or highway. The description in this deed carefully excludes any portion of the fee of 116th street. The property conveyed is not bounded by the street, but the boundary line commences at a point on the southerly line of the street, and runs thence along the southerly side of the street to the westerly side of 11th avenue; clearly showing that it was the intention of1 the parties to use the southerly side of this street as laid out upon the map as a boundary, and to convey no interest in the street itself to the grantee.
We think it is clear that there was no dedication of this street to the public by this conveyance. An intent on the part of the owner of land to dedicate is absolutely essential, and, unless such intention can be found in the facts and circumstances of the particular case, no dedication exists. To deprive the owner of his land, the intent to dedicate must clearly and satisfactorily appear". See 2 Dill. Mun. Corp. p. 751, § 636, and cases cited.
See, also, Washb. Easem. (1st Ed.) p. 181, where the learned" author says:
“Reference to a deed as a boundary to a street as laid out, but not opened, while it would estop the grantor as against his grantee, is not a dedication to the public, so as to deprive the grantor of thé right of compensation when the land is actually taken under the power of eminent domain.”
See, also, Easton Borough v. Rinek, 116 Pa. St. 1.
The intention to dedicate not only does not appear in this case, but it clearly appears that no such intention existed. The language of the description, excluding the street itself, and making the southerly line its boundary; the location of the property conveyed, fronting, as it did, upon an open public avenue (11th avenue); the acts of the parties in continuing the exclusive possession of the grounds laid out as a street in the hospital; ana the fact that the land was never used as a street, neither by the public nor the abutting owners,—clearly establish the absence of such intention.
A more difficult question remains to be determined, however, and that is whether Oarrigan, as the grantee of New York Hospital, acquired an easement in this strip of land laid out as 116th street which would entitle him to claim, as against the New York Hospital, that the street as laid out upon the plan of the city should remain a public street, so that, as grantee of the property conveyed to him, he would be entitled to the use of the land in *105 front of such property for light, air, and access. There is no express grant to such easement contained in the deed, and, if one exists, it must be implied from the fact that the northerly line of the property conveyed was the south side of the street. It is well settled in this state that, “without making such a dedication to the public, a grantor may, by selling lots, and describing them as bounded on a street running through his own land, create an easement on the land called a ‘street’ in favor of his own grantees, and that, although the fee of such land remains in him, it is incumbered by that easement.” See In re Opening of Eleventh Avenue, 81 N. Y. 447. Whether there is such a grant of an easement, however, express or implied, depends entirely upon the intent of the, parties to the grants; and, in construing the grant, court had to take into consideration the circumstances attendant upon the transaction, the particular situation of the parties, the state of the country, and the state of the thing granted, for the purpose of ascertaining the intention of the parties. See U. S. v. Appleton, 1 Sumn. 500, Fed. Cas. No. 14,463. Whether or not an easement was granted depends upon the construction to be given to the grant made by the parties; and, before an easement can be implied, it is necessary that there should be a “concurrance as well of the owner of the heritage which it is wished to charge with.the servitude, as of him in favor of whose heritage it is desired to create.” See Washb. Easem. p. 39, § 1. Whether a right of way or other easement is embraced in a deed is always a question of construction of the deed, having reference to its terms and the practical incidents belonging to the grantor-of the land at the time of the conveyance. The intention of the parties is to be learned from the facts. Huttemeier v. Albro, 18 N. Y. 50. It is thus the intention of the parties that is to govern, and that intention is to be ascertained by the terms of the grant, the circumstances attending upon the transaction, the particular situation of the parties, and the state of the thing granted. As before stated, there is here no express grant of the easement. The question is whether one can be implied from the terms of this grant.
This question of implied easements was much discussed by the old supreme court of this state and the court of errors, in questions arising upon the opening of streets in the settled portion of the city laid out under the act of 1807, and it was there finally held that where the owner of lots abutting on a street actually opened, and in use as a public street,- sold lots, bounding them upon such open street, he dedicated the street to the public, and, upon the fee of such street being acquired by the city under the act of 1807 or of 1813, the owner of the street held such fee subject to the right of the public to use the street, and also subject to an easement appurtenant to the lots sold, and was entitled to but nominal damages. The authority of these decisions has been questioned, and in some - important particulars expressly repudiated. See Bissell v. Railroad Co., 23 N. Y. 61, and also City of Buffalo v. Pratt, 131 N. Y. 293; 43 St. Rep. 278. In all the cases decided previous to the ones last cited, it appears that the streets upon which *106 the land conveyed was bounded were actually used by the public as streets. It is not that the street is laid out as a street upon a map or plan of the city, but that such street, in addition to being laid out, was actually used as a street, and the owner of the fee of the street had conveyed to various grantees lots thereon abutting, for which they had received a substantial consideration. The street, therefore, existed as a fact; and it was in relation to that fact, taken together with the conveyance of land abutting on the street, and the enhanced price for which the land had been sold (by which a compensation for the grant of such an easement in the street had been received), that it was held that such conveyance gave to the public and the grantees of the lot-an easement in the street; that the same should be laid out and used as a public street to its full width; and that it would be inequitaxble to allow such a grantor to compel his grantee to pay him a substantial price for the right to use the street, for which, by the enhanced price at which the lots had been sold, he had once been paid. In none of the cases that we have been able to discover-—-and we think we have examined all of them — was it held that a mere conveyance of a piece of land for a nominal consideration, by a description that carefully excluded all interest in the street itself, merely using the side of the street as a boundary for the property conveyed, and where no street had ever in fact existed, as a matter of law, implied a grant. As before stated, the authority of these cases has been seriously questioned by the court of appeals, and several of the principles which they were supposed to have established have been expressly repudiated. We have now three late decisions of the court of appeals which, taken together, we think establish certain rules that should be applied in cases of this kind. Thus, we may say that a grant of land bounded upon a street, of •which the fee is in the grantor, whether by terms of the grant the fee of the street would be included or not, does not óf itself amount to a public dedication of the street; that the owner of property abutting on the street who owns the fees of the street subject to an easement granted to private individuals is entitled to substantial damages when the fee is taken by a municipality for a public street; that, where there exists a private easement to use the street, the owner of the fee of the street subject to such easement was entitled to nominal damages only where the fee was not taken, but only an easement to the public, as no greater right was taken by the public than he had before granted to his grantees; and where the owner of property on both "sides of a street or highway had conveyed all of his property bounded on the street to grantees, who had thereby acquired an easement in the street for use as a street, he was entitled to the value of the property taken, subject to the private easement which had already incumbered the property, which value was merely nominal. See City of Buffalo v. Pratt, 131 N. Y. 299; 43 St. Rep. 278; Village of Olean v. Steyner, 135 N. Y. 348; 48 St. Rep. 66; and In re Adams, 141 N. Y. 300; 57 St. Rep. 408. And to this extent the cases before referred to in the old supreme court and the court of errors have been overruled; but all of these cases have proceeded *107 upon or are consistent with the general proposition that in construing a grant, to determine, whether or not a grant of an easement is implied, the crucial question is whether or not it was the intention of the parties that such an easement was to be included in the grant.
We fully recognize that in itiany cases such an intention will be presumed to exist from the nature of the grant itself, from the nature of the property conveyed, from the terms used in the description, or from the location or situation and use to which the property had been put before the making of the grant. In most of the decisions in which such grants have been - implied, the implication has arisen on one of two grounds: First. That the parties are presumed to contract in reference to the condition of the property at the time of the grant, and thus, as appurtenant to the property conveyed, will pass all of those rights and incidents which were actually in use at the time of the execution of the grant. Many illustrations could be given of implied grants arising from a situation of this character, and they will be found cited and commented upon in Washburn on Basements, in the section entitled “ Of Ways Created by Grant”; and this implication will arise wherever the owner of an estate grants a portion of it, and ways have existed or drains been used over the portion reserved for the benefit of the portion granted. A grant of all rights to use the portion reserved for such ways or drains will be implied.
The illustration used in one of the earliest cases is:
“So, if one be seized of White Acre and Black Acre, and use a way over White Acre from Black Acre to a mill, river, etc., and he granted Black Acre to B-., with all ways, easements, etc., the grantee shall have the same conveniency that the grantor had when he had Black Acre.” Staple v. Heydon, 6 Mod. 1.
Such an easement there passes as appurtenant to the thing granted, and the implication of the grant of such easement arising from the condition of the use of the property at the time of the grant
The other principle upon which a grant of an easement is implied is when it is necessary to the enjoyment of the thing granted, the familiar example of which is the implication of the grant of a right of way whefe the owner of two lots of ground, one fronting upon a highway, the other having no access to the highway, granted the lot having no access to the highway to a stranger, who would have no means of access to his lot except over the lot reserved. In that case the law would imply the grant of a right of way over the lot reserved, as without it the grantee would be deprived of the beneficial use-of the property granted.
The easement in Hew York City streets that was implied in the cases referred to did not, however, come strictly within either of these principles, for such easement was implied when the property abutted upon two streets in both, and thus no way of necessity could be implied, and the grant that was implied was more than a mere appurtenance to the land granted in use at the time. But the court then did what Mr. Justice Story said it was the duty of the court to do in U. S. v. Appleton, supra, viz., took into con *108 sideration the circumstances attending upon the transaction, the particular situation of the parties, the state of the country, and the state of the thing granted, for the purpose of ascertaining the intention of the parties At first the court held that no easement was granted at all under such circumstances; that it did not come within the principles established by which "a way of necessity would be implied. See Underwood v. Stuyvesant, 19 Johns. 181; In re Mercer St., 4 Cow. 542. But subsequently these rulings were reversed, and it would appear to' have been held that from such conveyance there was a dedication to the public, and an implied easement in the grantee. See In re Lewis Street, 2 Wend. 474; Livingston v. New York, 8 id. 88. But the implication of this dedication and of this grant of an easement was based upon the intention of the parties that was assumed from the situation of the property, the fact of the plan of the city as laid out'into avenues and streets having been filed, that the streets had been used for streets, that purchases were made of lots for the purpose of erecting buildings thereon bounded upon such streets; and it was held that, when a purchase is made of a lot bounding Upon a street in the city of New York, which is not yet opened, the purchasér is entitled to all the benefits and advantages belonging to the property of which he has become the owner, one of the most essential of which is that when the street is opened upon the application of the corporation, conformably to the law, regulating streets in that city, he will have a lot fronting upon a street upon which a building maybe erected without being compelled to compensate the owner of the fee to the full value of the land thus appropriated, the presumption being that the purchaser of the lot paid an enhanced price for the same in consideration of the lot being bounded on a street. See In re Lewis St., supra.
But, assuming that these cases are binding authorities, the principles that were there applied would not apply here. There was no single lot conveyed, by this gratit, but a part of several lots, the plot conveyed having a frontage upon Eleventh avenue. There could be no presumption that the purchaser of this gore paid an enhanced price for the same in consideraren of the lot being opened on the street, and this was not the purchase of a lot bounded upon a street, but a purchase of a narrow strip of land, which, upon the opening of 116th street, would be entirely disconnected from the grantor’s other property, and would be comparatively valueless to it, but which would be valuable to the grantee in rounding and completing the property owned by him. Then the hospital retained all of its property upon the other side of the street, and thus retained its interest to control the bed of the street. It maintained exclusive possession of the street itself, and the interest that it retained in the street exceeded largely the extent of the land that it granted. The property conveyed was a narrow strip on the south side of the street, about 172 feet long, with an average width of about twenty-five feet; while the property comprising the bed of the street was a piece of land 100 feet in width, and over 300 feet in length, comprising about eleven city lots, which appear in these proceedings to be worth over *109 $54,000. It could hardly be presumed to have been the intention of the parties that by the conveyance, for a nominal consideration, of this small strip of land, the beneficial enjoyment of a so much larger strip of land could have been intended. The effect would be that the right acquired by the implied grant was much more important and valuable than that of the property expressly conveyed. The New York Hospital has here made but a single conveyance, obviously for the mere purpose of straightening the boundary line between itself and its neighbor, reserving all of the residue of its property abutting on the street, and reserving to itself the substantial use of the fee of the street. It seems to us clear that not only is there an absence of proof of any intention to give to the grantee any right in or use of this piece of ground laid out as a street, but, on the contrary, the intention of the parties is clear that no such right was intended to be conveyed, and that no such grant can be implied.
We do not intend in any way to infringe upon the rule that, under ordinary circumstances, the implication of such a grant could arise from the terms of the grant itself when the owner of property abutting on the street conveys a portion of the property bounded by the street. That principle is well settled, and it is apparent that its application is very necessary to carry out the intention of the parties. But we are of the opinion that the peculiar facts and circumstances of this case make it an exception to the general rule, and affirmatively show {hat this conveyance of a comparatively small triangular piece of land did not grant as an appurtenance to it the beneficial use of a piece of property many times its size and value, and all for the consideration of one dollar. We are of the opinion, therefore, that the commissioners were entirely right in holding that the New York Hospital was the owner .of the fee of this property, not subject to any easement; and as its award, in view of the testimony, seems to have been reasonable, it must be approved.
The order confirming the report of the commissioners must therefore be affirmed, with costs against the appellants.
All concur.