(120 App. Div. 278)

SMITH v. SMITH.

(Supreme Court, Appellate Division, First Department. June 14, 1907.)

1. EASEMENTS—TERMINATION—MERGER.

Where easements over one tract of land for the benefit of another existed and both tracts come into the hands of one person, the easements were thereby extinguished, and he, in conveying the tracts to others, could create easements over one for the benefit of the other or not, as he chose.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Easements, § 75.]

2. SAME—CREATION—IMPLICATION.

Where the owner of both the lots abutting upon a proposed street and the bed of the street conveyed the lots by a description bounding them by the street, describing it as Avenue A, the purchaser and his grantees have an easement of light, air, and access over the land in the street abutting upon the lots.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Easements, §§ 56–58.]

3. SAME.

Where the conveyances through which a party derived title to land abutting on a street and the bed of the street expressly referred to a map on which the street was laid out, and there was in existence at the time an official map showing the street, mention in his conveyance of the land abutting upon the street to another, that it was bounded by the street, had the same effect, so far as the grant of an easement in the street is concerned, as if the map showing the street had been referred to.

4. SAME—EXTINGUISHMENT.

Where the owner of both the land abutting upon a proposed street and the bed of the street conveyed the land by a description bounding it by the street, thereby creating an easement in the street for the benefit of his grantees, the easement was not affected by the discontinuance of the street by public authority.

McLaughlin and Houghton, JJ., dissenting.

Appeal from Special Term, New York County.

Action by John R. Smith against Rebecca Smith. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Richmond Weed, for appellant.

Leonard J. Obermeier, for respondent.

SCOTT, J. In this action the plaintiff seeks to enforce private easements of light, air, and access over lands belonging to defendant immediately in front of and abutting upon lands belonging to plaintiff, and from a judgment dismissing his complaint upon the merits the plaintiff appeals.

The plaintiff owns four lots of land in the city of New York, which, taken together, contain 100 feet on 103d street, extending back 100 feet 9 inches to the middle of the block between 103d and 104th streets, and bounded on the east by a line which once constituted the westerly line of Avenue A as projected on the official city map. The defendant owns the land lying directly to the east of plaintiff's property; her land being what formerly constituted the westerly half of the bed of Avenue A, as shown on said official map. It is not disputed that Avenue A was laid out as a street in 1807 by commissioners appointed under an act of the Legislature. In 1841 a private owner's map was made by Francis Nicholson, city surveyor, and filed with the land records of the city of New York. This map corresponds as to streets and avenues with the official city map, above mentioned, and on both maps the property now owned by plaintiff is shown as bounded on its easterly side by the property designated as Avenue A, now owned by defendant. The common source of title was one James S. L. Cummins, who owned both parcels of land in 1869. He derived his title by a series of conveyances from one Andrew McGowan, who conveyed the property (with numerous other lots) by a description which referred to the Nicholson map, giving the map numbers of the lots as shown on said map, and bounding the lots by the streets and avenues shown on that map (including Avenue A). The deed from McGowan, as well as those which followed it, to and including the deed to Cummins, embraced "all the right, title, and interest of the parties of the first part in all the undivided one-half of all the streets and avenues in point of and adjoining the premises above described," and in all of the said deeds, except the one to Cummins, the words of grant were followed by the qualifications, "subject to the use of the lands laid down on said map as public streets and avenues by all the owners of the lots laid down on said map, and by the public generally as public streets and avenues according to said map." It appears to be quite clear that plaintiff can base no claim against defendant by reason of the limitations above quoted. Wheeler v. Clark, 58 N. Y. 267. The effect of the conveyance to Cummins was that he acquired title both to the lots now owned by plaintiff and to the westerly part of Avenue A, and as between these two properties he could create easements over one part for the ben-

efit of the other or not, as he chose. The description of the property conveyed in his immediate deed, and in those which preceded it in the chain of title, imported notice to him, however, that the streets and avenues by which the lots were bounded were intended to be used at some time as public streets. The plaintiff's rights, if any, must rest upon the conveyance by which Cummins disposed of the property. In 1869 Cummins executed a mortgage to the Equitable Life Assurance Society of 12 lots (including those now owned by plaintiff), in which he bounded them on the easterly side by the westerly side of Avenue A. He thus retained in himself the fee title of the westerly half of the roadbed of Avenue A, and the sole question in the case is whether he incumbered that fee with private easements of light, air, and access in favor of the lots specifically covered by the mortgage, and which abutted upon the avenue. This mortgage was afterwards foreclosed; and, since the referee's deed relates back to the mortgage and conveys all the title that the mortgagor had, we may most conveniently treat the mortgage as a deed of conveyance by Cummins. The case presented, therefore, is that Cummins, owning both the lots abutting upon a proposed street and the bed of the street, conveys the lots by a description bounding them by the avenue, describing it as Avenue A.

I do not understand that it is proposed at this late day to question the rule, firmly established by a multitude of authorities and succinctly stated in Lord v. Atkins, 138 N. Y. 184, 33 N. E. 1035, as follows:

"When the owner of land lays it out into distinct lots with intersecting streets and avenues, and sells the lots with reference to such streets, his grantees or successors cannot afterwards be deprived of the benefit of having such streets kept open. When in such case a lot is sold bounded on a street, a purchaser and his grantees have an easement in the said street for the purposes of access, which is a property right."

And the same result follows where the streets and avenues have been laid out on a public or official map adopted by the parties as defining the limits and location of the property conveyed. Matter of Eleventh Ave., 81 N. Y. 436; Village of Olean v. Steyner, 135 N. Y. 341–345, 32 N. E. 9, 17 L. R. A. 640; Kerrigan v. Backus, 69 App. Div. 329, 74 N. Y. Supp. 906; White's Bank of Buffalo v. Nichols, 64 N. Y. 73. The easement thus impliedly granted is quite distinct from any public right to use the streets and avenues, and is a property right of which the owner cannot be deprived except by condemnation or purchase. It is suggested, however, that the rule of law above quoted has no application to the present case, because Cummins in his mortgage, made no reference to any map or plan on which Avenue A was laid down. This, as I consider, is of no importance. Cummins was bound to know his own title, and, so knowing it, he must have known that the several conveyances through which he derived title had expressly referred to the Nicholson map. Furthermore, there was in existence at the time the mortgage was made the official map showing Avenue A laid out precisely as it was laid out on the Nicholson map. When Cummins described the lots covered by his mortgage as running "along the westerly side of Avenue A," he must of necessity have intended Avenue A as laid down on the Nich-

olson map or the official map, for it was only on those maps (and the tax map) that Avenue A had at that time any existence. Under the circumstances existing at the time of the mortgage, the mention of Avenue A as a boundary must be deemed to have the same effect, so far as the grant of an easement is concerned, as if the map showing that avenue had been expressly referred to.

Much reliance is placed by the respondent upon Matter of Brook Ave., 40 App. Div. 517, 58 N. Y. Supp. 163, affirmed on opinion below, 161 N. Y. 622, 55 N. E. 1093. While there are undoubtedly expressions in that opinion which, read alone, would seem to favor the respondent's contention, the question herein presented was not presented, and consequently was not intended to be decided. The controversy there was over the payment of an award for opening the avenue; and all that was decided was that the owner of the abutting lots was entitled to no part of the award, because by the opening of the avenue he received all that his deed entitled him to—that is, that the avenue should be opened and kept open as a public street—in this regard following Matter of 116th Street, 1 App. Div. 439, 37 N. Y. Supp. 508, and City of Buffalo v. Pratt, 131 N. Y. 293, 30 N. E. 233, 15 L. R. A. 413, 27 Am. St. Rep. 592. Other cases are cited to us as tending in one way or another to qualify or limit the general rule upon which the plaintiff's case rests. It is unnecessary to discuss or distinguish them at length, as that has already been done by the Court of Appeals in Holloway v. Southmayd, 139 N. Y. 390, 34 N. E. 1047, 1052. It appears in this case that Avenue A was never opened or worked as a public street; and that after the making of the Cummins mortgage, and before its foreclosure, the Legislature by an act (chapter 494, p. 573, Laws 1875) altered the map of the city by striking therefrom Avenue A at this point. This, as I consider, had no effect upon the plaintiff's claim to enforce the private easement such as was included in and covered by the mortgage. Such an easement, as has frequently been held, is property; and is, by its very nature, as indestructible by the acts of the public authorities or of the grantees of the premises as is the estate which is the subject of the grant, and to which the easement is appurtenant. Holloway v. Southmayd, 139 N. Y. 402, 34 N. E. 1047, 1052. The often cited case of White's Bank of Buffalo v. Nichols, 64 N. Y. 65, is closely in point. In that case the defendant had acquired a private easement over Garden street, as laid out on a certain map, because the conveyance under which he held had bounded his lot by the street, then only shown on a map, but not opened or even staked out. Thereafter the street was narrowed by municipal authority, leaving a strip of land between defendant's property, as described in his deed with reference to the original line of the street, and the line of the street as narrowed and actually acquired and opened. The Court of Appeals held that, while the fee title to this strip remained in the original grantors or their successors, yet that the defendant's private easement in and over it remained unimpaired by reason of the refusal of the public authorities to open it as a public street to its full original width, saying:

"When land is granted bounded on a street or highway, there is an implied covenant that there is such a way, that so far as the grantee is concerned it

shall be continued, and that the grantee, his heirs and assigns shall have the benefit of it."

And again:

"Neither the corporation of the city, or the state authorities, or the grantor, can do any act to impair this right or restrict the grantee in the enjoyment of it."

Upon the undisputed facts the plaintiff was entitled to relief, and the judgment should therefore be reversed and a new trial granted, with costs to the appellant to abide the event.

PATTERSON, P. J., and LAUGHLIN, J., concur.

McLAUGHLIN, J. (dissenting). This action was brought to procure a judgment establishing a private right of way over certain real estate of the defendant, and for an injunction and damages. The complaint was dismissed on the merits, and the plaintiff appeals.

There is little or no dispute as to the material facts involved. In 1807 a street, called "Avenue A," running between 101st and 106th streets and parallel to and east of First avenue, was laid out on a map of the city of New York made by commissioners appointed under an act of the Legislature. In 1841 a private map known as "map of 236 lots lying in the Twelfth Ward of the city of New York" was made, on which appeared Avenue A as laid out on the city map. Avenue A was never opened or used as a street, and was stricken from the city map by an act of the Legislature in 1875 (chapter 494, p. 573, Laws 1875), and while it does not, and in fact never did, exist as a street except upon the maps, it is convenient in considering the question here involved to refer to it in locating the property which is the subject-matter of this litigation.

The plaintiff is the owner of a tract of land situate on the northwesterly corner of Avenue A and 103d street, extending 300 feet westerly along 103d street, and approximately 100 feet northerly along Avenue A, to the center of the block. The defendant owns the westerly half of Avenue A adjoining the plaintiff's premises. Both parties trace their title to a common grantor, one Cummins, who became the owner in 1860. In 1869 he mortgaged the property now owned by the plaintiff, describing it as follows:

"All those twelve certain lots, pieces, or parcels of land situate, lying and being in the Twelfth Ward of the city of New York, bounded and described as follows: Beginning at a point formed by the intersection of the westerly side of Avenue A and the northerly side of 103d street; running thence westerly, along the northerly side of 103d street, three hundred (300) feet; thence north, and parallel with Avenue A, one hundred (100) feet nine (9) inches, to the center line of the block; thence easterly, along said center line three hundred (300) feet, to the westerly side of Avenue A; thence, along the westerly side of Avenue A, one hundred (100) feet nine (9) inches, to the place of beginning."

This was the same description by which the property was conveyed to him, and the title to the property now owned by the defendant was conveyed to him by adding at the end of the description above quoted the following:

"Together with all the right, title, and interest of the parties of the first part to the streets in front of the premises hereby granted."

The words "right, title, and interest" were sufficient, as will hereafter be seen, to lodge in Cummins the fee of the westerly half of Avenue A adjoining the plaintiff's premises. The Cummins mortgage was foreclosed in 1876, and the plaintiff claims under the purchaser at the foreclosure sale, through mesne conveyances, each of which described the property conveyed precisely in the same way that it had been described in the mortgage. The question presented is: Has the plaintiff an easement or right of way over the defendant's land? That he has no public easement or any rights growing out of or predicated upon the map made by the commissioners of the city in 1807, and the striking therefrom or the discontinuance of such avenue in 1875, is clear. Insurance Co. v. Stevens, 101 N. Y. 411, 5 N. E. 353; Holloway v. Southmayd, 139 N. Y. 390, 34 N. E. 1047, 1052. Indeed, I do not understand that the plaintiff claims any rights other than a private easement. The discontinuance of Avenue A by the city does not, of course, determine the question as to whether or not the plaintiff has a private easement, because the destruction of a public easement does not destroy a private one. White's Bank of Buffalo v. Nichols, 64 N. Y. 65; Holloway v. Southmayd, supra; Matter of Adams, 141 N. Y. 297, 36 N. E. 318, Reis v. City of New York, 188 N. Y. 58, 80 N. E. 573. But I am of the opinion that the plaintiff has not a private easement in the land owned by the defendant. The fact that an actual or proposed street is used as a boundary in describing property does not in and of itself create any easement in such street. The determination of that question necessarily depends upon the intent of the parties to the grant, and, in construing the grant for the purpose of ascertaining the intent, the court will take into consideration the situation of the parties, the state of the thing granted at the time made, and in fact all the circumstances attending the transaction. Matter of 116th Street, 1 App. Div. 436, 37 N. Y. Supp. 508; Matter of Brook Avenue, 40 App. Div. 519, 58 N. Y. Supp. 163, affirmed on opinion below, 161 N. Y. 622, 55 N. E. 1093; Matter of Mayor (Robbins Avenue) 83 App. Div. 513, 82 N. Y. Supp. 417. In Underwood v. Stuyvesant, 19 Johns. 181, 10 Am. Dec. 215, the owner of a parcel of land subdivided it into lots and made a map thereof on which were shown certain streets upon which lots abutted; one of them being called "Peter street." The owner then leased certain lots bounded on the west by the Bowery—which was an open public street—and on the north by Peter street. Peter street was not then open and was subsequently discontinued, when a new plan of the city was made. The plaintiff claimed a right of way over Peter street as laid down on the map, but, as he had access to his premises by the Bowery, the court held that the lessee had not the right to insist upon the conditional agreement on the part of the lessor. In Hopkinson v. McKnight, 31 N. J. Law, 422, it was held that a conveyance of a lot which was bounded upon an "alley and street proposed to be laid out," but which was never opened and used as a street, did not amount to the grant of an easement or right of way. In Matter of Brook Avenue, supra, a grantor had conveyed property which, as here, fronted on an existing

public street. On one side it was bounded by the line of "Brook avenue as laid out by the department of parks of the city of New York." Brook avenue, like Avenue A, was never opened or used as a public street, and it was held that the grantee acquired no private easement therein.

All of the plaintiff's property has a frontage on 103d street. Avenue A has never been used either as a public or private street. There is nothing to indicate that Cummins, in his mortgage, or any of the subsequent grantors of the lots now owned by the plaintiff, intended the grantees should have a right to any present use of the land included within the bed of Avenue A or any other or further easement, except that which might accrue to them if such avenue should be opened as a public street. A contrary intention, it seems to me, necessarily must be inferred from the language used by Cummins in the mortgage and in the respective deeds of conveyance which thereafter followed. In considering the intention of the parties and the inferences to be drawn from the mortgage made by Cummins, the history of the conveyances of the tract in question is important. All of the deeds of the property, previous to that which put the title in Cummins, conveyed the bed of Avenue A by the following words:

"Together with all the right, title, and interest of, in and to the one-half part of the streets and avenues in front of and adjoining the premises above described, subject to the use of the land laid down on said map as public streets and avenues by all the owners of lots laid down on said map and by the public generally as public streets and avenues."

In Wheeler v. Clark, 58 N. Y. 267, almost the identical words were used by a grantor in conveying lots along which ran an existing highway, and it was there held that upon the closing of the highway the grantees had no private easement over the street. This decision, it is true, is not directly in point because there the question arose between the owners of two lots abutting on the highway. It is, however, as it seems to me important when applied to the language used in all of the grants from 1841 to and including the grant to Cummins as ascertaining his intent in omitting the words which he did in describing the property mortgaged by him. The mortgage made by Cummins described the tract exactly as it had been described in the deed to him, except that the rights in Avenue A were omitted. When the property was sold under the foreclosure of that mortgage, in 1876, Avenue A had been stricken from the map, and it was then known that it was not to become a public street, and yet the referee's deed and all subsequent deeds continued to use precisely the same description of the property. The fact that Avenue A was thus used in describing the property, with no mention of any private easement or right, although it had previously been stricken from the map, and had never in fact been opened or used as a street, indicates as it seems to me that Avenue A was used merely as a boundary of the land conveyed, rather than that any rights in the avenue were intended to be included. This conclusion is strengthened by the fact that the reservation of the fee in the street, if it were to be burdened with a private easement after the street had been stricken from the city map, would have amounted to little or nothing so far as preserving property rights is concerned. It is also strengthened by

the fact that the alleged right had never been asserted nor sought to be used, and that no claim was made by reason of it, until nearly 30 years after the foreclosure of the Cummins mortgage, and a portion of that time at least the same had been occupied in open and notorious hostility to such claim.

The case is plainly distinguishable from those where a grantor has laid out his property into lots and streets and conveyed with reference to such streets, and for that reason the case of Lord v. Atkins, 138 N. Y. 184, 33 N. E. 1035, and other similar cases cited by the appellant, do not apply. The deed which conveyed the property to Cummins described the property in the same way as the mortgage given by him, except it did not include the bed of the street. It is true the property was described as "twelve certain lots," and, on referring to the map, it appears that four of them fronted on Avenue A, but it is very significant that no reference was made in the conveyance to any map. The property was described by the metes and bounds as a whole, and was and always has been treated as a single parcel. The words "lots," as thus used, under the facts here presented, is entitled to no more weight than the word "acres" would be. The plaintiff now owns this tract, extending, as we have already seen, 300 feet along 103d street—an open and public street. Under all the circumstances I do not see how, if we are to follow Matter of Brook Avenue, supra, it can be maintained that the Cummins mortgage created any easement in favor of these lots in Avenue A, or that the plaintiff has any interest in the land owned by the defendant.

I am of the opinion that the judgment appealed from should be affirmed, with costs.

HOUGHTON, J., concurs.