PATTERSON, P. J., INGRAHAM, LAUGHLIN and CLARKE, JJ., concurred.

Judgment affirmed.

In the Matter of the Application of THE CITY OF NEW YORK, Respondent, Relative to Acquiring Title, etc., to the Lands, Tenements and Hereditaments Required for the Purpose of Opening West One Hundred and Seventy-seventh Street, etc., from Amsterdam Avenue to St. Nicholas Avenue, etc., and from Broadway to Riverside Drive, in the Twelfth Ward, Borough of Manhattan, City of New York.

PORTLAND REALTY COMPANY, Appellant; MEYER A. BERNHEIMER, Respondent.

First Department, December 30, 1909.

Real property — conveyance of lands abutting on proposed street — when easements pass by implication — eminent domain — street opening — when award to owner of fee should be nominal.

Where the whole cost of a street opening is assessed upon the property benefited the owners of abutting property are entitled to attack the amount of an award made to the owner of the fee of a street which is already subject to a public use.

Whether the grant of an easement arises by implication on the conveyance of lands depends upon the intent of the parties and to ascertain the same the court may take into consideration the circumstances attending the transaction, the particular situation of the parties, the state of the country and of the thing granted.

It is not essential that a grantor who conveys a portion of lands owned by him exercised easements appurtenant to the portions conveyed at the time of the grant. It is sufficient that the easement was open, visible and reasonably necessary to the enjoyment of the part conveyed.

The owner of a plot of land whereon a proposed street had been located on a map filed, the street then being in use by the public, conveyed portions of the

land lying on each side of the proposed street to other parties, expressly reserving to himself the fee of the proposed street, it being intended that the grantees should erect buildings abutting on the street and reconvey the same to their grantor. The buildings were erected, but the lands whereon they stood were conveyed to other parties. At the time of the original conveyance the land was not inclosed, or subject to any private use, but on the contrary the grantor himself had built sewers and other structures beneath the street. On all the evidence, *held*, that an implied right of way over the proposed street passed to the grantees and that on a formal street opening the grantor, although vested with the fee, was entitled to nominal damages only.

It is immaterial that the grantor did not own the ends of the proposed street but merely an interior portion thereof.

INGRAHAM and HOUGHTON, JJ., dissented, the latter with opinion.

APPEAL by the Portland Realty Company from part of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 10th day of March, 1909, confirming the report of commissioners of estimate and assessment herein as to awards made for damage parcels Nos. 3 and 4.

*Leo C. Dessar*, for the appellant.

*Samuel J. Benson*, for the respondent City of New York.

*Harry G. Smith*, for the respondent Bernheimer.

SCOTT, J.:

In this proceeding for the opening of One Hundred and Seventy-seventh street the controversy brought up by the appeal from the order of confirmation is between the owner of a portion of the bed of the street and the owner of abutting lots on both sides of the street. By the resolution of the board of estimate and apportionment authorizing the opening of the street it was ordered that the whole cost and expense of the proceeding should be assessed upon the property deemed to be benefited thereby. Consequently the owners of the lands abutting upon the street have a direct interest in seeing that awards for the property taken shall be kept as low as is legally possible. The appellant, Portland Realty Company, is the owner of two plots of land, lying on either side of the proposed street, each 170 feet in width and approximately 100 feet in depth. These plots lie directly opposite each other, and each commences

100 feet westerly from Amsterdam avenue, and 100 feet easterly from Audubon avenue, thus lying exactly in the middle of the block between Amsterdam and Audubon avenues. On each of these plots are erected four tenement houses. The respondent Meyer A. Bernheimer is the owner of the bed of the street between and in front of the two plots above described. The commissioners of estimate have made a substantial award to Bernheimer. The appellant insists that Bernheimer has so incumbered his title with easements for street purposes in favor of the abutting property that he now owns only a barren, naked fee for which no more than nominal damages should be allowed.

Prior to May 31, 1905, the premises in question constituted a part of a larger tract belonging to the New York Juvenile Asylum, which conveyed it to one Wesley Thorn, who in turn, on June 1, 1905, conveyed it to Leo M. Klein and Samuel Jackson. By conveyances executed successively by Klein and Jackson and the Elm Realty Company, one Sigmund Wechsler became on June 2, 1905, the owner of a plot of land 170 feet in width, equidistant from Amsterdam and Audubon avenues, and extending from the middle line of the block between One Hundred and Seventy-seventh and One Hundred and Seventy-eighth streets on the north to the middle line of One Hundred and Seventy-sixth street on the south. This plot embraced the property involved on this appeal.

On June 8, 1905, the respondent Bernheimer (who had not yet acquired title) made a contract to sell to David Perlman and Abraham Bernikow so much of the plot, last above described, as lay outside the lines of One Hundred and Seventy-sixth and One Hundred and Seventy-seventh streets, the description being carefully so worded as not to include any part of either of said streets. At the same time Perlman and Bernikow contracted to erect on said premises twelve tenement houses, four on One Hundred and Seventy-sixth street and four on each side of One Hundred and Seventy-seventh street, and to convey the lots and houses back to Bernheimer, and he agreed to purchase them. On June 12, 1905, Sigmund Wechsler conveyed the whole plot to Bernheimer by a description which included the bed of One Hundred and Seventy-seventh street. On June 20, 1905, Bernheimer conveyed the property to Perlman and Bernikow by a description which excluded the

bed of One Hundred and Seventy-sixth and One Hundred and Seventy-seventh streets, and on June thirtieth Perlman and Bernikow by the same description conveyed the property to the appellant here, the Portland Realty Company, and on November 14, 1905, Bernheimer by the same description quitclaimed any interest he might have in said property to the appellant. In the contract of sale to Perlman and Bernikow and in the deed to them and in the quitclaim deed to this appellant Bernheimer was careful to insert the following clause: "It is expressly understood that no right, title or interest of the party of the first part in the said strips of land so laid out and designated as 176th and 177th streets, is conveyed or affected by the foregoing description, and that the land within the lines of said streets and any award which may be made for same are hereby reserved to the party of the first part." The buildings to be erected on One Hundred and Seventy-seventh street pursuant to the contract between Bernheimer and Perlman and Bernikow were not completed within the contract time, and Bernheimer never took title to them. He remains, however, the owner in fee of the bed of One Hundred and Seventy-seventh street opposite said buildings. It does not appear that he owns the bed of the street either east or west of these buildings. At the time of the contracts between Bernheimer and Perlman and Bernikow official maps showing the proposed location of One Hundred and Seventy-sixth and One Hundred and Seventy-seventh streets had been adopted and filed, but these proceedings had not been begun. The land was used for purposes of passage, however, and the laying of gas and water pipes had begun. The appellant makes no claim to any award for any interest in the street, conceding that Bernheimer is the owner in fee and entitled to the whole award if any is made. Its only claim is that the award to Bernheimer should be merely nominal.

The sole question to be determined is whether or not Bernheimer granted to Perlman and Bernikow, as an incident to and appurtenance of the lots conveyed to them and bounded on One Hundred and Seventy-seventh street, an easement to use One Hundred and Seventy-seventh street, the fee of which he retained, for street purposes. No such easement was expressly included in the deed, and if it was granted at all it was by implication. "Whether a

grant of an easement arises from implication in a grant of real estate depends upon the intent of the parties to the grant; and in construing the grant the court will take into consideration the circumstances attending the transaction, the particular situation of the parties, the state of the country, and the state of the thing granted, for the purpose of ascertaining the intention of the parties." (*Matter of Brook Ave.*, 40 App. Div. 519; *Matter of One Hundred & Sixteenth Street*, 1 id. 436; *United States* v. *Appleton*, 1 Sumn. 500.) And it is not essential that the incidental use of the property retained for the benefit of the property conveyed should be actually exercised by the grantor at the time of the grant. It is sufficient that it is open and visible and reasonably necessary to the full enjoyment of the demised premises. (*Simmons* v. *Cloonan*, 81 N. Y. 557.) When we come to consider the particular circumstances attending the sale from Berheimer to Perlman and Bernikow it seems impossible to assume that either party to the conveyance had any other idea than that the purchaser should have the use of One Hundred and Seventy-seventh street in front of the premises conveyed for the usual street purposes. That street had been laid out on the city map and thus predestined to be acquired and opened as a public street. It was no longer inclosed or subjected to any private use, but was used by the public as a means of access to the lots on either side of it. The pipes and conductors commonly put under the street surface were being put in, Bernheimer himself putting in a sewer pipe. By the agreement made by Perlman and Bernikow, which was cotemporaneous with Bernheimer's contract to sell, both properly being read together, Perlman and Bernikow were to erect four tenement houses on each side of the proposed street. Unless the street was to remain open for light, air and access these houses, which were apparently to cost a large sum of money, would be absolutely valueless. Surely it cannot be successfully urged, under these circumstances, that Bernheimer could have covered the bed of the street in front of the houses with buildings, or could have cut off the street at each end of his ownership of its bed with an impenetrable fence, so that no one could gain access to the houses, which were in the middle of the block and could be reached only through the street. Both parties to the grant understood, and must have had in mind when the grant was made, that

the land was sold for the purpose of having houses built thereon, and that it would not be available for that purpose unless the grant carried with it the necessary incident of a right to use One Hundred and Seventy-seventh street, in so far as Bernheimer by his ownership of the bed of the street could convey that right. It is not important or controlling that Bernheimer did not own the ends of the street, and could convey no right over them, for as has been said the ultimate opening of the street by the city was predestined and practically inevitable. The deed from Bernheimer to Perlman and Bernikow shows that it was made for a substantial consideration, and it is no more than reasonable to assume that that consideration was fixed in view of the fact that the property abutted upon a street, the use of which would make it available for building purposes. It is inconceivable that the grantees would have undertaken to build eight tenement houses in the middle of a plot of land with no outlet in any direction. If the fact that the houses were to front on a street entered into the agreement as to the consideration, the value of the street easements to the property conveyed must be deemed to have been included in the consideration, and it is certainly inequitable that Bernheimer's grantees or their successors in interest should be again called upon to pay a large sum for the right to use the street. The cases are probably rare, in respect to urban properties, wherein an owner of a large plot of land through which the city runs streets should be awarded for the land taken for street purposes a sum commensurate with the value of the lots abutting upon the street when opened. Without the streets the property is incapable of adequate improvement. With the streets opened the property not taken for street purposes at once becomes available for improvement and increases largely in value, and thus the owner of the tract realizes at least a large part of the value of the property taken for the street by the enhancement in value, in consequence of opening the street, of that which remains. The authorities relied on to sustain the order appealed from all arose under very different circumstances from those present here, and serve but to illustrate the rule that the question whether or not easements are impliedly granted depends in each case upon the particular facts of that case. The only doubt as to whether or not Bernheimer included a grant of easements in his deed arises from the specific reservation which

he inserted therein. That, however, was only a reservation of title, and was not, as we construe it, intended to derogate from the grant. It was apparently inserted for greater caution, perhaps, in view of *Matter of Eleventh Avenue* (81 N. Y. 436), to make sure that he retained the right to receive the whole award that might be made for the bed of the street. That, however, had no bearing upon what the amount of that award should be. The appellant does not question Bernheimer's right to receive the award; it only questions its amount. The commissioners have awarded him the full value of the land as if free from any easement in favor of the abutting property. In our opinion this was an erroneous basis for valuation. The award should have been for the value of the land, subject to easements in favor of the abutting property on both sides of the streets, for the use of the land taken for street purposes. This would doubtless mean a nominal award. (*Matter of City of New York*, 196 N. Y. 286.)

The order, in so far as it is appealed from, should be reversed, the motion to confirm denied, and the matter remitted to the same commissioners to revise their awards and assessments in accordance with the views herein expressed.

McLAUGHLIN and CLARKE, JJ., concurred; INGRAHAM and HOUGHTON, JJ., dissented.

HOUGHTON, J. (dissenting):

On the 31st day of March, 1905, the proper authorities by resolution approved of a map for the extending and opening of West One Hundred and Seventy-seventh street from Broadway to Riverside drive, in the borough of Manhattan, city of New York. Thereafter such proceedings were taken by the board of estimate and apportionment in condemnation as resulted in an award of 9,100 each for damage parcels Nos. 3 and 4 to the respondent Bernheimer, and from the confirmation of such awards the Portland Realty Company appeals.

It is conceded that all proceedings were regular, but the Portland Realty Company being an abutting owner, and being assessed for benefits to pay the damage awarded, appeals on the ground that the awards to Bernheimer should have been nominal only, because the parcels for

which he was given substantial damage were burdened with the easements of light, air and access, and that, therefore, the awards to him should have been only nominal.

Prior to March 31, 1905, the entire tract of land between Amsterdam avenue and Audubon avenue, and through which West One Hundred and Seventy-seventh street, from Broadway to Riverside drive, was projected, was owned by a common owner, and no street had been laid out by such owner and no right of way existed thereon. After the city had filed its map showing where West One Hundred and Seventy-seventh street was to be extended, and before condemnation proceedings were instituted in February, 1906, this common owner conveyed on the 31st day of May, 1905, the entire tract in controversy to one Thorn, and by mesne conveyances such premises were on the 12th day of June, 1905, conveyed to the respondent Bernheimer.

The tract of land in question lay in the center of the block, between Amsterdam and Audubon avenues, and was 170 feet in width and extended northerly from the north side of West One Hundred and Seventy-sixth street, as ultimately laid out, about 360 feet, so that when West One Hundred and Seventy-seventh street was cut through there were lots on both sides of that street, as well as on the northerly side of West One Hundred and Seventy-sixth street. On the 20th day of June, 1905, Bernheimer deeded the premises in two separate parcels to Perlman and Bernikow. The first parcel was described as " beginning at a point on the northerly side of a strip of land laid out by the city of New York and designated as One Hundred and Seventy-sixth street," a certain number of feet easterly of Audubon avenue, running thence northerly 199.83 feet (West One Hundred and Seventy-seventh street not being mentioned) and thence easterly the requisite number of feet to take in the parcel; thence southerly the same number of feet which the line had been run to the north (which would strike the northerly side of West One Hundred and Seventy-sixth street), and thence westerly a certain number of feet to the place of beginning. The second parcel was described as " beginning at a point on the northerly side of a strip of land laid out by the city of New York and designated as 177th Street," running thence easterly a certain number of feet, and so around the parcel to the place of beginning.

By these descriptions the block between West One Hundred and Seventy-sixth street and One Hundred and Seventy-seventh street as extended, and to the sides of each, was conveyed, as well as that plot lying on the northerly side of One Hundred and Seventy-seventh street as projected.   Following these descriptions the deed provided as follows: "It is expressly understood that no right, title or interest of the party of the first part in the said strip of land so laid out and designated as 176th and 177th streets is conveyed or affected by the foregoing descriptions; and that the land within the lines of said streets and any award which may be made for same, are hereby reserved to the party of the first part."   When Bernheimer had contracted to convey to Perlman and Bernikow, and on the same day on which he entered into such contract (in which his right to any award for the laying out of the streets was also reserved) he entered into a contract with Perlman and Bernikow that in consideration of their erecting certain specified buildings upon said premises fronting on the north side of One Hundred and Seventy-sixth street and on the north and south side of One Hundred and Seventy-seventh street within a certain time, he would repurchase the property at a certain price.    Perlman and Bernikow did not complete the improvements on One Hundred and Seventy-seventh street within the specified time and Bernheimer repurchased from them only the tract fronting on One Hundred and Seventh-sixth street.    Thereafter Perlman and Bernikow by two separate descriptions conveyed the lots on the north and south sides of One Hundred and Seventy-seventh street, bounding the same "by the  *  *  *  side of a strip of land laid out by the city of New York and designated as One hundred and Seventy-seventh street," to the appellant, the Portland Realty Company.

The land taken by the city for One Hundred and Seventy-seventh street and reserved by Bernheimer is designated as damage parcels Nos. 3 and 4, and lands owned by the appellant, the Portland Realty Company, are separately designated as benefit parcels Nos. 193 to 196, both inclusive, and 212 to 215, both inclusive. The strips of land lying at the sides and between the parcels conveyed to the appellant and Amsterdam and Audubon avenues were owned by other parties and respondent Bernheimer had no interest in them.

Bernheimer, therefore, could give no right of way to his grantees to either Amsterdam avenue or Audubon avenue because he did not own to the side of either.

What the appellant insists is that the property having been deeded in contemplation of the opening of a street by the city the land reserved by the grantor which was to be and was taken for such street must be deemed to have been burdened in favor of abutting lots with the easements of light, air and access, and hence, when the city ultimately took it, only nominal damages arose; and that its land being assessed for benefits it is aggrieved because it has to contribute to the payment of the substantial award made.

I am of opinion that the principle enunciated in *Matter of City of New York* (196 N. Y. 286) and *Matter of One Hundred & Sixteenth Street* (1 App. Div. 436) and kindred cases does not apply. In those cases the city instituted proceedings to acquire the fee to lands upon which a street had already been laid out and used. The owner had either laid out the street himself in cutting his property up into lots, and had conveyed the various parcels on both sides of the street according to the street, and retained to himself the title to the fee of the street or he had adopted an existing street and done the same thing, and when the street was converted from a private right of way to a public right of way claimed that substantial damages should be awarded to him for the land for the street which he had reserved. Under such circumstances the courts held, and with great reason, that he was entitled to only nominal damages because the land which he retained in himself was already burdened with all the uses of a street, and that the changing of a street from a private one to a public one only accomplished the purpose of continuing it as a street.

In the present case the situation is wholly different. No street existed through the land where West One Hundred and Seventy-seventh street was extended, nor did Bernheimer lay out any. It is true that in his descriptions he referred to the fact that the city of New York was about to lay out one, but he was careful to restrict his boundaries to the sides of the proposed street and to reserve to himself all " right, title or interest " in the land which he supposed would be appropriated for a public street, and to reserve to

himself any award which might be made for the same. His grantees assented to this and it must be assumed that by so doing they abandoned any easements they might have over the land reserved, if they ever had any.

As between the city and Bernheimer, the city does not claim that Bernheimer is not entitled to a substantial award for the land taken, or that there was any dedication on his part, and it is manifest from the contract, deed and reservations that none of the parties understood that Bernheimer was dedicating any land for street purposes, or that his grantees were entitled to any right of way from necessity or otherwise over the land which he reserved to himself. On the contrary, all parties expected that a right of way would be provided by the taking of the land by the city in its extension of West One Hundred and Seventy-seventh street from Broadway to Riverside drive.

I am of the opinion, therefore, that the award was properly confirmed, and that the order appealed from should be affirmed, with costs.

Order reversed, motion to confirm denied and matter remitted to commissioners as stated in opinion. Settle order on notice.