WILLIAM LORD, Appellant, *v.* ALBERT H. ATKINS et al., Respondents.

When an owner of land lays it out into lots, with intersecting streets, and sells the lots with reference to such streets, his grantees or successors cannot afterwards be deprived of the benefits of having such streets left open. Each grantee of a lot bounded on a street and his successors have an easement in the street, which is a property right.

The owners of a tract of land divided the same into village lots, bounded upon streets, and caused a map to be made thereof. A written explanation was attached to the map, giving the location of the streets and the dimensions, locations and numbers of the lots. In this statement, "East avenue" is described as a street three rods wide, running north and south. On the map, the east line of the street is delineated for its full length; its west line only appears as running from the north end of the street for about two-thirds of its length. The lots on the west side of the street, south of the west line, as it appears on the map, were described in the attached statement, the same as the other west lots, by numbers and as bounded on "East avenue." The owners subsequently sold the whole tract, excepting eight of the village lots "lying on and east of East avenue," and a subsequent grantee conveyed the land west of and including the avenue; the deed, however, recognized its exist-

ence as a street. Defendants, who were owners of the eight lots so excepted, entered with teams upon the land west of the east line of the street in front of their lots and south of its west line as it appeared upon the map, and plowed up the same for the purpose of grading it as a highway. In an action of trespass brought by plaintiff, to whom a portion of the land west of defendant's lot had been conveyed, by deed which bounded him on the east by the east side of the avenue, *held,* that plaintiff took title subject to an easement in the *locus in quo* as a public highway for defendants' benefit; and so that the action was not maintainable.

(Argued April 11, 1893; decided April 25, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made February 2, 1892, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William J. Mantanye* for appellant. The foreclosure of the prior mortgage wipes out any rights or claims under a subsequent map, and puts the whole title in Smith. Defendants cannot question this title of Smith under the foreclosure or otherwise, and are estopped from questioning it. (*Arnot* v. *McClure,* 4 Den. 41.) This foreclosure was in 1861, thirty years ago, under the old statute, which made the affidavits presumptive evidence of their contents, and made the sale equivalent to a sale under the decree of a court of equity. (3 R. S. 547, 338, § 12.) No proof attacking the title of Smith or the foreclosure is given, and the papers are, therefore, evidence that Smith owned the mortgage, certainly as against defendants, who also hold under Smith. (*Arnot* v. *McClure,* 4 Den. 41; *Sherman* v. *Willett,* 42 N. Y. 146.) There was an abandonment of the lane if any existed. (*Hennesy* v. *Murdock,* 43 N. Y. S. R. 748.) The defendants' claim, that by reference to the map in the earlier deeds and to the lots and East avenue as laid on the Porter map, they have some right beyond and south of Horton street

and lot 6, where plaintiff's land first joins them and where they trespassed, is untenable. (*Greene* v. *Collins*, 86 N. Y. 246, 252; *Wells* v. *Garbutt*, 132 id. 430, 435; *Parsons* v. *Johnson*, 68 id. 63; *Treadwell* v. *Inslee*, 120 id. 458; *Johnson* v. *Shelter Island*, 122 id. 330; *Root* v. *Wadhams*, 107 id. 384, 394, 396; *Butterworth* v. *Crawford*, 46 id. 349.) The college, Gerret Smith its grantee by deed and by the foreclosure, and his grantee McGraw were the owners of the fee of all the lands of plaintiff, of the school district, of Pike, of the lot 11 conveyed to Jacob Atkins, and of the lot 6, and Horton street, conveyed to defendant Atkins. Being the owners of the fee of all the land, they held no separate easement over any part, for one cannot have an easement in lands of which he has the fee. (*Parsons* v. *Johnson*, 68 N. Y. 62, 65; *Scrymser* v. *Phelps*, 33 Hun, 481; *Wells* v. *Garbutt*, 132 N. Y. 430; *Root* v. *Wadhams*, 107 id. 384; *Butterworth* v. *Crawford*, 46 id. 349; *Treadwell* v. *Inslee*, 120 id. 438; *Griffith* v. *Morrison*, 106 id. 165; *Greene* ⸹. *Collins*, 86 id. 247, 254.) The fee of the whole land from 1849, subject to the mortgage, was in the college. In 1858 the college conveyed the whole to Gerret Smith, only reserving certain lots specified, but reserving no easement. It vested the whole fee in Smith and destroyed the easement, if any, for one cannot have an easement in that of which he has the fee. (*Parsons* v. *Johnson*, 68 N. Y. 62, 65; *Scrymser* v. *Phelps*, 33 Hun, 481; *Arnot* v. *McClure*, 4 Den. 41; *Sherman* v. *Willett*, 42 N. Y. 146.) Plaintiff or his grantor did not take title subject to an easement, when it was not on the map, not apparent, not given or reserved. (*Greene* v. *Collins*, 86 N. Y. 246, 252; *Wells* v. *Garbutt*, 132 id. 430.) The fact that plaintiff had information before purchasing, of a claim of easement or highway, and, therefore, had warranty against it, is no help to defendant or injury to plaintiff's rights. (*Nellis* v. *Munson*, 108 N. Y. 453.) The trial court was in error in allowing defendant, Albert Atkins, to answer the questions: "When you bought the land did you buy it in reference to that avenue?" and "Did you buy it for the purpose of village

lots?" (*Greene* v. *Collins,* 86 N. Y. 247, 254; *Cowdrey* v. *Coit,* 44 id. 382; *Wilson* v. *Deen,* 74 id. 531; *Humphreys* v. *N. Y., L. E. & W. R. R. Co.,* 121 id. 435; *Swick* v. *Sears,* 1 Hill, 17.) The exception is well taken to that portion of the last conclusion of law, whereby the trial court decides that the defendants are entitled to a judgment dismissing the complaint, with costs, and ordered such judgment. (*Greene* v. *Collins,* 86 N. Y. 246, 252, 253; *Parsons* v. *Johnson,* 68 id. 63; *Wells* v. *Garbutt,* 132 id. 430; *Longendyke* v. *Anderson,* 101 id. 625; *Root* v. *Wadhams,* 107 id. 384.)

*A. P. Smith* for respondent. The appeal to this court was unauthorized and there is no case properly before this court. (Code Civ. Pro. § 191, subd. 3; *Scully* v. *Sanders,* 77 N. Y. 598; *Wheeler* v. *Scofield,* 67 id. 311; *Nichols* v. *Voorhees,* 74 id. 28; *Petrie* v. *Adams,* 71 id. 79; *Rogers* v. *Village, etc.,* 94 id. 638; *Trevitt* v. *Barnes,* 18 N. Y. S. R. 533; 110 N. Y. 500; *Zoeller* v. *Riley,* 7 Civ. Pro. Rep. 390; 98 N. Y. 668.) Where the owners of lands in a city or village lay out such lands into lots, with streets and avenues intersecting the same, and sell the lots with reference to such streets and avenues, they cannot afterwards deprive their grantors of the benefit of having such streets and avenues kept open; and the same principle is applicable to a similar dedication of urban lands to be used as an open square or public park. (*Trustees, etc.,* v. *Cowen,* 4 Paige, 510; *Story* v. *N. Y. E. R. R.,* 90 N. Y. 145; *Wyman* v. *Mayor, etc.,* 11 Wend. 487; *Coe* v. *Bearup,* 14 Wkly. Dig. 246; *City of Cincinnati,* 6 Pet. 431; *Bissell* v. *N. Y. C. R. R. Co.,* 23 N. Y. 61; *White's Bank* v. *Nichols,* 64 id. 65; *Taylor* v. *Hopper,* 62 id. 649.) The right to use East avenue as a street or avenue, by those purchasing lands thereon and bounded, was an easement and appurtenant to the lands thereby thus conveyed. It became so by dedication and was as effectual as if created by an absolute grant. (*Taylor* v. *Hopper,* 62 N. Y. 649; *Story* v. *N. Y. E. R. R. Co.,* 90 id. 145.) The right of way

created by the deed of McGraw to Corwin to lot No. 11 being
an appurtenance to the lot conveyed, passed from Corwin to
Pike, and Pike to Stockwell, and Stockwell to Jacob Atkins,
so that he had all the rights that Corwin had. ( *Voorhees* v.
*Burchard*, 55 N. Y. 98; *Comstock* v. *Johnson*, 46 id. 620;
*Outerbridge* v. *Phelps*, 13 Abb. [N. C.] 117; *Simmons* v.
*Cloonan*, 81 N. Y. 557; *Huttemeier* v. *Albro*, 18 id. 48;
*Adams* v. *Conover*, 22 Hun, 424; *Curtis* v. *Ayrault*, 47 N.
Y. 73; *Mott* v. *Palmer*, 1 id. 564; *Green* v. *Collins*, 86 id.
246; *Newman* v. *Nellis*, 97 id. 285–292.)

O'BRIEN, J.   The complaint charged the defendants with a
trespass upon the plaintiff's lands by entering upon them
without authority, with teams, and plowing the same and
injuring the plaintiff's crops.   The defendants justified their
acts by alleging that the *locus in quo* was a public highway.
The place had never been worked as a public highway before,
but all the acts done or performed by the defendants upon
the land in question were, confessedly, such as they could
rightfully do upon the assumption that the *locus in quo*
was in fact a public street or highway.   The plaintiff claimed
to own the land in fee free from any easement in favor of the
defendants or the public for a street, highway or otherwise.
The issues between the parties were mostly if not wholly upon
questions of fact, and the courts below have found with the
defendants.   It is not claimed that the street was ever laid
out by any public authority, but only that it was dedicated
to the use of the public as a street or highway by the original
owners of the land and from whom both the plaintiff's and
defendants' title is derived.   The strip of land upon which the
alleged wrongful entry was made was originally part of a
parcel of fifty-seven acres which was conveyed to New York
Central College by Gilmore Kinney in the year 1849.   This
deed recalls an interesting chapter in the political history of
that day, recent enough to be within the memory of men still
in active life.   The college was projected by Gerret Smith and
others with a view to aid in the crusade that they had entered

upon against the institution of slavery. It was intended, as we may assume, to be not only an instrument for the propagation of the principles of its founders, but a home where the fugitive from the South might be educated. The buildings were erected on this fifty-seven acres, and the projectors, with that hope and confidence which colored all their views of the future, anticipated that a considerable village would soon grow up and cluster around them. The trustees divided the tract into village lots bounded upon streets and avenues. In 1858 they caused a map to be made of the northern portion of the tract, upon which these village lots and the streets and avenues were shown, and a written explanation was annexed to such map giving the location of the streets and avenues and the dimensions, location and number of the several village lots thereon. From this written statement it appears that East avenue was a street three rods in width running north and south. The easterly boundary is delineated on the map for the full length of the street, but the westerly boundary appears only by a line on the map three rods west of the easterly boundary but extending south only about two-thirds of the length of the avenue, as claimed by the defendants. The land on the east is all divided and plotted into village lots, and numbered upon the map from one to eleven, the last named being the most southerly lot. Though the westerly street line is not delineated on the map in front of the lots on the south, from seven to eleven inclusive, yet these lots, with the others, are all described by numbers in the written statement attached to the map as bounded on East avenue. The *locus in quo* is in front of these seven lots on the west, and if the westerly line upon the map referred to was extended south the same distance as the easterly line, then it would be within the boundaries of the street, and the defendants had the right to grade and prepare the land there for use as a street. The court below has found that there was a dedication of the land in question to the use of the public as a street. The plaintiff is the owner of four acres in front and west of the seven village lots, and he claims

that his title in fee extends to the west line of the lots as they appear on the map, which would exclude the street claimed, whereas the defendants claim that plaintiff's easterly boundary and their westerly boundary are separated by a street three rods in width. The college is the common source of title, and it evidently intended to dedicate the strip of land in question to the purposes of a public street by the written statement attached to the map, describing the lots as on East avenue, though the westerly street line was not exhibited on the map for the whole distance north and south. In 1858, it became apparent that the college was not to be a success, and the trustees conveyed the whole tract to Gerret Smith, excepting, however, eight of the village lots "lying on and east of East avenue," which lots are described in the exception by numbers. This deed, therefore, recognized the existence of a street at the point in question. In 1872, Smith conveyed the whole tract to McGraw, subject, however, to the reservations expressed in his deed from the trustees, and in 1884, McGraw conveyed about eight acres, including the college buildings, to the union free school. This grant extended to the east side of East avenue, and includes the street, but recognizes its existence as such. The same year the trustees of the school conveyed about four acres to the plaintiff. This grant extended to the east line of East avenue, and included the street, or the land which the defendants claim was subject to an easement for a street. The plaintiff, therefore, took his title with a distinct recognition in his deed of the existence of a street on the east side of it. It is of but little consequence that the deed assumed to convey the soil included in the street boundaries. The grantor could convey it subject to the easement, and that is the effect of the conveyance. The important thing in the deed is that it recognized the existence of East avenue in front and west of the lands of the defendants. So the title of the defendants to the village lots, in front of which they attempted to grade for a street, came to them through several *mesne* conveyances from the trustees of the college, in all of which East avenue

is referred to, or the lots are described as on the east side of, or on the avenue. These facts and circumstances justified the finding of the trial court that the *locus in quo* had become a public street or highway by dedication as to these parties, though the duties and burdens of maintaining it are not imposed upon the public until accepted in some way. It is well settled that when the owner of land lays it out into distinct lots, with intersecting streets or avenues, and sells the lots with reference to such streets, his grantees or successors cannot afterwards be deprived of the benefit of having such streets kept open. When, in such a case, a lot is sold bounded by a street, the purchaser and his grantees have an easement in the street for the purposes of access, which is a property right. (*Story* case, 90 N. Y. 145; *The Trustees, etc.,* v. *Cowen,* 4 Paige, 510; *Wyman* v. *The Mayor,* 11 Wend. 487; *Bissell* v. *N. Y. C. R. R.,* 23 N. Y. 61; *White's Bank, etc.,* v. *Nichols,* 64 id. 65; *Taylor* v. *Hopper,* 62 id. 649; *Huttemeier* v. *Albro,* 18 id. 48.)

The main contention of the plaintiff seems to be that after and about the time that Smith took the conveyance of the property from the college, he also foreclosed a prior purchase-money mortgage, and took title under that, thus extinguishing all easements for street purposes originating after the college become possessed of the property. There is no finding to sustain this claim, though it does appear in the evidence that Smith did foreclose a mortgage, under the statute, given by the college for a portion of the purchase money, and purchased the land upon the sale. It is not important to inquire as to the purpose or effect of this proceeding, for, more than ten years afterwards, when Smith conveyed to McGraw, he limited the grant to such estate as had been conveyed to him in the deed from the college. He did not assume to convey any other or greater right, and it is under this conveyance that the plaintiff claims. In purchasing under the statutory foreclosure he could have recognized the division of the property, subsequent to the mortgage, into village lots intersected by streets and bounded thereon. Indeed, he was in equity

bound to take notice of the new situation and recognize rights which had arisen in the meantime. That he did so is shown by the fact that he subsequently conveyed the whole property subject to every easement or right that could have been enforced against the college, his grantor. Some exceptions taken at the trial are discussed upon the brief of the learned counsel for the plaintiff. We have examined them, and as they do not appear to present any legal error that could have prejudiced him, the judgment should be affirmed.

All concur.

Judgment affirmed.