(120 App. Div. 297)

In re JEROME AVENUE IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   June 21, 1907.)

1. PARTITION—DEEDS—CONSTRUCTION—PROPERTY CONVEYED.
   Where, in partition, it was the desire of the parties, and the direction of the court that the fee to one-half a roadbed should be sold and conveyed with the lots abutting upon it, such fee passed under the referee's deeds, though they described the land as bounded by the road.

2. HIGHWAYS—LOSS OF PUBLIC RIGHTS—EFFECT OF ENCROACHMENT.

Mere obstructions or encroachments placed upon a public highway will not affect or diminish the public rights in it; nonuser, coupled w.th affirmative evidence of a clear determination to abandon, being necessary to forefeit such rights.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Highways, §§ 279–287.]

3. MUNICIPAL CORPORATIONS—STREET APPROPRIATION.

Where, in 1877, the commissioners of public parks, pursuant to Laws 1874, pp. 432, 831, cc. 329, 604, and Laws 1876, p. 461, c. 436, certified a map laying out a portion of New York City, and it was declared by the statute to be final and conclusive as to the location, etc., of streets, etc., as well in respect to the mayor, etc., of the city as in respect to the lands, etc., affected, and to all other persons whomsoever, the bed of a road embraced within the lines of an avenue laid out on the map became legally appropriated and designated as a public street.

4. SAME—EASEMENTS—RIGHTS ACQUIRED BY CITY.

Where a city acquires land for a park, or any other corporate purpose, it takes the property with the same easements and subject to the same servitudes that a private purchaser would take or assume if he acquired it.

5. EMINENT DOMAIN—APPORTIONMENT.

On the taking of land for a street, the owner of the fee is not entitled to the whole award, where easements of light, air, and access are vested, in another; but the holder of such easements is entitled to their value.

Appeal from Order entered on Report of Referee.

Application of the city of New York relative to acquiring title to part of Jerome avenue, etc. The city and others appeal from an order confirming the report of a referee. Reversed, and matter remitted to referee.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John F. Dunn, for appellant city of New York.
Joseph A. Flannery, for claimant Opdyke and others.
Arthur H. Wadick, for claimants Sheridan.

SCOTT, J. The present appeal brings up for determination the question as to who should receive an award, amounting to $13,544.71, for a piece of land designated in the report of the commissioners as "Parcel No. 2," and which has been awarded to Peter Sheridan and others, heirs of Margaretta Sheridan, deceased. When the report came before the court for confirmation, the city of New York and the appellants Opdyke both claimed that the awards should be made to them, as also did one Tier (not represented on this appeal), who claimed a part of the award. The court thereupon confirmed the report so far as concerned the amount awarded for the plot, but referred it to a referee "to take proof as to the various claims of title to, and interest in, or ownership of, the parcels known as No. 2 * * * on the map attached to said report, * * * and that said referee report his opinion thereon with his findings of fact and conclusions of law." The referee, after taking much evidence, both oral and documentary, made a most exhaustive report, in which he concluded, and so reported, that parcel No. 2 is owned by Peter

Sheridan and others, heirs at law of Margaretta Sheridan, deceased, in fee simple absolute. Upon the coming in of his report, the court confirmed it, and directed that the whole of the award for said parcel No. 2, with interest, be paid to the said heirs of Margaretta Sheridan, deceased.

This proceeding is for the acquisition of title to a part of Jerome avenue, upon which abuts Van Cortlandt Park, owned by the city of New York, and a portion of the park area included in the area of assessment for benefit, amounting to $17,742.40, has been levied upon the city as owner of said park. The total awards amount to $37,-038.08, and the whole amount thereof is to be assessed upon the property benefited. Parcel No. 2, over which the present controversy has arisen, constitutes a part of the westerly half of what was once known as the "Mile Square Road," an old road which in the year 1870, and for many years prior thereto, had been an opened and traveled highway in the county of Westchester. The land abutting upon it, now owned by the city of New York, and constituting a part of Van Cortlandt Park, was acquired by Thomas O'Brien in the year 1827, by a deed which described the property as "running along" said Mile Square Road, under which, as is conceded by all parties, he acquired title to one-half of the road, subject to its use as a public highway. By his will Thomas O'Brien devised the property to his daughter Margaret (or Margaretta) Sheridan for life, with remainder to her heirs. Margaret Sheridan died in 1870, intestate, leaving as her only heirs at law Peter Sheridan, Thomas Sheridan, Edward Sheridan, and Mary A. Roemer, the respondents herein. In 1871 a partition suit was instituted between these heirs, in which an interlocutory judgment was entered appointing a referee to sell and convey all the real estate owned by said heirs as tenants in common. The referee caused a map to be made dividing the property into lots or plots; each containing from 1¾ to almost 3 acres. The plots designated on the map by the Nos. 10 and 11 were sold and conveyed by the referee to Joseph J. Potter, and were subsequently conveyed to George Opdyke, under whose title the appellants Opdyke now claim.

The first question to be determined is whether or not the referee's deeds to Potter covered and included the half of the Mile Square Road, and the only doubt upon that subject arises from the map made by the referee and the description contained in his deeds. The map bounded the property by the westerly side of the road, which was not shown thereon, and the deeds described the lots conveyed as beginning at the intersection of another road, "with the westerly line of the road leading from Williamsbridge to the Mile Square Road," and contained the boundary "along the westerly side of said road." The respondent's contention, which has been upheld by the referee and the court below, is that, in selling the property by the map and the description above noted, the referee excluded from his conveyance the westerly half of the Mile Square Road, which remained vested in fee in the Sheridan heirs. We are unable to accede to this view. It may be conceded that if nothing appeared except the referee's map, and the description contained in the deeds executed by him, it might well

be held that he had not effectually conveyed the bed of the road, although even in that case his conveyance would have included such easements in and over the road as would have left in the heirs no beneficial interest and nothing but a bare fee. But the question whether or not the fee of an adjacent street or road passes by the conveyance of abutting property is a question of intention, which justifies the courts in looking beyond the mere words of description, and considering the situation of the property, the circumstances under which the deeds are made, and the purpose sought to be effected. Potter v. Boyce, 73 App. Div. 383, 77 N. Y. Supp. 24, affirmed 176 N. Y. 551, 68 N. E. 1123.

It is conceded that the conveyance to O'Brien included the westerly half of the road, and that title to that half passed to the Sheridan heirs. The purpose of the partition suit was to make partition of all the property owned in common by those heirs, including as well the bed of the road as any other real estate. In the complaint, and also in the interlocutory decree awarding partition and directing a sale, the property is described by precisely the same description as that contained in the deed to O'Brien, which concededly passed the fee of the roadbed to him. Thus it clearly appears that it was the intention and desire of the parties, the direction of the court, and the duty of the referee, that the roadbed should be sold and conveyed with the lots which abutted upon it. There is nothing whatever to indicate any purpose on the part of the parties to the suit, the court, or the referee to exclude or withhold from the sale the title to the roadbed, and no such consequence can be held to result from the form in which the referee couched his deeds. Mott v. Eno, 97 App. Div. 580, 90 N. Y. Supp. 608; Id., 181 N. Y. 346–383, 74 N. E. 229. We therefore conclude that the deeds from the referee in partition to Potter (under whom the appellants Opdyke hold) included and conveyed the fee of the westerly half of the bed of the road, and that the Sheridan heirs have no title thereto.

The next question to be considered is as to the conflicting claims of the Opdykes and of the city of New York to be paid the award. As has been said, the Mile Square Road was opened and in use as a traveled public highway at least down to about the year 1870. In the year 1867, the Legislature authorized certain commissioners to lay out and acquire an avenue to be known as Central Park Avenue. Chapter 400, p. 953, Laws 1867. There was no express authority in the act to discontinue any existing highway, and none is to be inferred therefrom. The avenue which was laid out under this act embraces the Mile Square Road at certain points, but not at the particular point in question. Here it ran entirely to the east of the old road, being separated from it by a narrow strip of land belonging to Woodlawn Cemetery. This Central Park avenue appears to have been acquired some time in 1870, or thereabouts, and to have been put in use in or about the year 1871. Thereafter the use of the Mile Square Road by the public appears to have been generally, if not wholly, discontinued, and it became to some extent obstructed and permitted to fall into disrepair. It does not appear, however, that

it was ever formally or legally discontinued, or that the owners of the abutting property inclosed it, or exercised any acts of ownership or dominion over it. It is a familiar rule that mere obstructions or encroachments placed upon a public highway (and nothing more is shown in this case) will not affect or diminish the public rights in it. Nothing will do that except nonuser, coupled with affirmative evidence of a clear determination to abandon, and of such determination there is no evidence in this case. It is, however, not very important to determine whether the road was effectually abandoned at this time.

The portion of Westchester county comprising the locus in quo was annexed to the city of New York in 1874, and in 1877 the commissioners of public parks, pursuant to the provisions of chapters 329 and 604, pp. 432, 831, of the Laws of 1874, and chapter 436, p. 461, of the Laws of 1876, certified a map laying out that portion of the city of New York. Copies of this map were filed in the department of parks, the office of the register of the county of New York, and the office of the Secretary of State. On this map is laid out Jerome or Central avenue, the lines of which are coincident with the lines of Jerome avenue as involved in this proceeding, and embraced the whole of the Mile Square Road. This map was declared by the statute to be final and conclusive as to the location, width, and grades of the streets, avenues, and roads, public squares, and places exhibited thereon, as well in respect to the mayor, aldermen, and commonalty of the city of New York, as in respect to the lands, tenements, and hereditaments within the boundaries thereof and (or) affected thereby, and in respect to all other persons whomsoever. The bed of the Mile Square Road, within the lines of the proposed Jerome avenue, then became legally appropriated and designated as a public street. Matter of Mayor, etc., 24 App. Div. 9, 49 N. Y. Supp. 119. In 1884, the Legislature passed the public parks act, designating the land to be acquired by metes and bounds; the land to be acquired for Van Cortlandt Park being so described that its easterly boundary was designated as the westerly side of Jerome avenue, by which was unquestionably meant the Jerome avenue shown on the park commissioner's map of 1877, so that the park land was actually bounded by the westerly line of the Mile Square roadbed. Chapter 522, p. 625, Laws 1884. The lands comprised within the limits of Van Cortlandt Park, as described in the act, included the plots owned by the appellants Opdyke, and which came to them through the referee's deed to Potter in the Sheridan partition suit. Title to the lands vested in the city on confirmation of the report of the commissioners in condemnation on October 23, 1888.

The referee has found that, when the abutting property on the west side of Mile Square Road was acquired by the city in 1888 for Van Cortlandt Park, the abutting owners (the appellants Opdyke) were paid, by their awards, the value of the private easements in the Mile Square Road; that value being included in the awards. He also expresses the opinion that, when the city acquired the title to the abutting property, the private easements theretofore existing for the benefit of the private owners ceased to exist, "since the city could not

continue to hold or embrace such merely private easements, after the rights of the public in said Mile Square Road as a public highway had ceased to exist in 1876 or 1877." In this particular the learned referee fell into error, because he failed to realize the power of the city in its corporate capacity to acquire property. If the city purchases or acquires by condemnation real property for a park, a schoolhouse, an engine house, or any other corporate purpose, it takes the property with the same easements and subject to the same servitudes that a private purchaser would take or assume if he acquired the same property. The position of affairs when the city acquired Van Cortlandt Park, in 1888, was that the Opdykes owned in fee both the property taken and one-half of the old roadbed of Mile Square Road that abutted upon it; that the property taken abutted upon Jerome avenue as laid out on the public map of the city, and which included all of the Mile Square Road; that the land acquired by the city not only abutted upon Jerome avenue, but was described in the act of the Legislature, and in the proceedings of the condemnation commissioners, and their map as bounded by the westerly side of Jerome avenue. Upon the plainest principles, while the Opdykes retained the fee title to the bed of what had been the westerly half of the old Mile Square Road, the city acquired, as appurtenant to the land taken by it, private easement of light, air, and access over the land laid down as Jerome avenue, including the Opdykes' half of the Mile Square Road, and there can be no question but that such easements in abutting property are as valuable and important to a public park as to any other use to which real property can be put. The award made for parcel No. 2 obviously and concededly represents the full fee value of the road.

"There would be manifest injustice in awarding the whole compensation to the owner of the fee, in view of the fact that such compensation is ultimately payable by the owner of the adjacent lots in the form of assessments, while no part of these assessments is chargeable to the owners of the fee of the land taken." Matter of Eleventh Avenue, 81 N. Y. 449. The appellants Opdyke have striven to convince us that the rule laid down in the case last cited has been overruled by the Court of Appeals in De Peyster v. Mali, 92 N. Y. 262, and by this court in Matter of Brook Ave., 40 App. Div. 519, 58 N. Y. Supp. 163. After a careful reading of these cases, we remain unconvinced. In De Peyster v. Mali, no question of an assessment appears to have been involved, and the city had taken and paid for the defendant's property which abutted upon the Bloomingdale Road, and to which the easements had attached. In the Matter of Brook Avenue, no question of assessment was discussed, and the court found that the appellant's deed had conveyed to him no present easements. The court, however, in its opinion, referred to the decision in the Matter of Eleventh Avenue, saying that the rule stated in that case had "never been seriously questioned."

Our conclusion is that the award for the full fee value of parcel No. 2 should be so divided that the appellant the city of New York will be awarded the value of its private easements therein of light, air, and access, and that the defendants Opdyke will be awarded the

value of their fee, subject to said easements. This will necessitate a reference back to the referee.

The order appealed from must be reversed, and the matter submitted to the referee to apportion the award in accordance with this opinion, and to report thereon to the court at Special Term, without costs in this court to any party. All concur.

---

(120 App. Div. 516)

### MUNRO v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. June 21, 1907.)

LIMITATION OF ACTIONS—LIABILITY CREATED BY STATUTE—REFUSAL TO GIVE TRANSFER—PENALTIES.

Appeal from Municipal Court of New York.