JOHN A. STIRNWEIS, Respondent, *v.* CHARLES CACIOPPO, Appellant.

(Argued November 19, 1931; decided January 5, 1932.)

*John S. Russell, Richard P. Charles* and *Lester C. Ringe* for appellant. Plaintiff at no time had title to that portion of the land contracted to be sold by him lying between the Drube map line of Fresh Pond road and the line of Fresh Pond road as legally established by the condemnation proceeding of 1911. (*Kings County Fire Ins. Co.* v. *Stevens,* 87 N. Y. 287; *White's Bank* v. *Nichols,* 64 N. Y. 65; *Mead* v. *Riley,* 50 N. Y. Super. Ct. 20; 102 N. Y. 669; *Trowbridge* v. *Erich,* 191 N. Y. 361; *Matter of City of New York,* 209 N. Y. 344.) The westerly line of Fresh Pond road is the line fixed by the condemnation proceeding in 1911 and not the Drube line nor the line on the alteration map. (*Nichols Copper Co.* v. *Connolly,* 208 App. Div. 667; 240 N. Y. 596.) The plaintiff could

not at any time perform the terms and conditions on his part to be performed under the contract between the parties. (*Dunham* v. *Williams*, 37 N. Y. 253; *Higgins* v. *Reynolds*, 31 N. Y. 151; *Scripture* v. *Morris*, 38 App. Div. 377; 159 N. Y. 534; *Nicklas* v. *Keller*, 9 App. Div. 216.)

*Henry Rubin* for respondent. The condemnation proceeding in 1911 did not, and could not, deprive the abutter at that time of his street frontage on Fresh Pond road. (*City of Buffalo* v. *D., L. & W. R. R. Co.*, 190 N. Y. 84; *Matter of Scheibel* v. *O'Brien*, 230 N. Y. 277; *Honey* v. *Village of Haverstraw*, 124 N. Y. 273; *McCabe* v. *City of New York*, 213 N. Y. 468; *Reis* v. *City of New York*, 188 N. Y. 58; *Matter of City of New York* [*Third Ave.*], 183 App. Div. 688.) An abutter by virtue of proximity has a special right to have the street in front of his property kept open forever as such and continued as a public street, and this right constitutes property of which he cannot be deprived without compensation. (*Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *Lahr* v. *Metropolitan El. R. Co.*, 104 N. Y. 268; *Holloway* v. *Southmayd*, 139 N. Y. 390; *Donahue* v. *Keystone Gas Co.*, 181 N. Y. 313; *Kane* v. *N. Y. E. R. R. Co.*, 125 N. Y. 164; *Forster* v. *Scott*, 136 N. Y. 577; *Eels* v. *A. T. & T. Co.*, 143 N. Y. 133; *White* v. *Manhattan Ry. Co.*, 139 N. Y. 19; *Wynehamer* v. *People*, 13 N. Y. 378; *Brazell* v. *Seattle*, 55 Wash. 180; *Rogers* v. *Bradshaw*, 20 Johns. 735.) Even though the condemnation proceeding had the effect of moving the line of Fresh Pond road to the condemnation line, plaintiff's rights and easements over the intervening strip were the same as though the line of the road remained at the Drube line. (*Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *Matter of Scheibel* v. *O'Brien*, 230 N. Y. 277; *White* v. *Manhattan Ry. Co.*, 139 N. Y. 19; *Harrower* v. *Ritson*, 37 Barb. 301; *Lord* v. *Atkins*, 138 N. Y. 184; *Donahue* v. *Keystone Gas Co.*, 181 N. Y. 313; *Lahr* v. *Metropolitan El. R. Co.*, 104 N. Y. 268; *Cohen* v. *Mayor*, 113 N. Y. 532; *Peace* v. *McAdoo*, 110 App. Div. 13; *Sweet* v.

*Perkins*, 196 N. Y. 482; *New York* v. *Rice*, 198 N. Y. 124; *Ackerman* v. *True*, 175 N. Y. 353; *Matter of Rapid Transit R. R. Commrs.*, 197 N. Y. 81; *Reynolds* v. *Interborough R. T. Co.*, 206 N. Y. 587.) If any doubt existed as to the location of the westerly line of Fresh Pond road it was removed by the alteration map which established it at the Drube line. (*Matter of City of New York* [*Third Ave.*], 183 App. Div. 688; *McCabe* v. *City of New York*, 213 N. Y. 468; *Reis* v. *City of New York*, 188 N. Y. 58.)

CARDOZO, Ch. J. The plaintiff agreed to sell and the defendant to buy a parcel of land in Queens county running eighty-five feet along the westerly side of Fresh Pond road. At the time fixed for closing, the buyer declined to accept a conveyance upon the ground that between the easterly side of the seller's lot and the westerly side of Fresh Pond road there was a strip of land, varying in width from about eight to six and a half feet, the property of another. The seller brought this action for specific performance. The defendant counterclaimed for the down payment and the expenses incurred in examining the title. The trial court gave judgment in favor of the defendant. The Appellate Division reversed and awarded judgment to the plaintiff for the relief demanded in the complaint.

In 1872 the owners of a tract of land embracing the premises in suit prepared a map, known as the Drube map, and filed it in a public office, selling lots thereafter with reference thereto. Fresh Pond road was shown on this map, and became a highway by dedication, or so the record fairly indicates. Among the buyers of land in reliance on this map was Ann Morton, who owned the premises in suit till 1887. In that year she made a conveyance to one Villing, whose title by mesne conveyance became vested in the plaintiff. The deed from Morton to Villing was sufficient to convey to the grantee an easement or right of way in Fresh Pond road, the eastern boundary of the lot. It did not, however, convey the

fee of the road to the center. The description in the deed was in such form that the fee of the road to the center was retained by the grantor. The land was described as beginning " at the side " of the road, and running along the road, thus excluding the fee from the subject of the grant (*Kings County Fire Ins. Co.* v. *Stevens*, 87 N. Y. 287; *White's Bank* v. *Nichols*, 64 N. Y. 65; *Matter of City of New York*, 209 N. Y. 344, 351). As to this the parties are agreed. Since the fee, though it was then subject to an easement, was not conveyed to Villing, it is not owned by the plaintiff, who can have no better title than Villing could bestow.

In 1911, there was adopted by the Board of Estimate and Apportionment a final map of the borough of Queens, indicating Fresh Pond road thereon as one of the city's streets. This map, dated October 19, 1911, was filed in the office of the Register in February, 1912. Condemnation proceedings were begun by the city in 1911 to appropriate the fee of the highway so laid out upon the map, and thereafter the proceedings went on to a decree. The lines of Fresh Pond road as thus established did not correspond exactly with those of Fresh Pond road as laid out upon the Drube map in 1872 and used by the public as a dedicated street. The road as it was appropriated by the city was pushed farther to the east, leaving an intervening space of about eight to six and a half feet wide, which had formerly belonged to Morton and had never been conveyed away. The map indicates this strip as part of an existing road, but a road which to that extent is to be closed or discontinued. The Appellate Division held that the defendant was not prejudiced by the plaintiff's inability to transfer the title to the space so closed, for the reason that the fee of the strip, though retained by Morton or her heirs, was subject to private easements in favor of abutting owners who had bought upon the faith that it would be kept open as a road. The " naked or barren " fee (*Reynolds*

v. *Interborough R. T. Co.*, 206 N. Y. 587) of the road had been left in the grantor, but by necessary implication, resulting both from the terms of the grant and from the physical conditions, easements or rights of way had been conveyed to the grantees (*Holloway* v. *Southmayd*, 139 N. Y. 390).

We may assume, without deciding, that the existence of such easements in the intervening strip would break the force of the objection that the title to the fee was in the ownership of another. This assumption will be made, though the ownership of the fee of a public or a private road may give an abutting owner greater rights in some contingencies than would come to him from the possession of the right to pass over the surface and to have the upper spaces open (*Matter of City of New York* [*Sedgwick Ave.*], 213 N. Y. 438). The difference in value, if not negligible altogether, would in any event be so small that it could easily be adjusted by an abatement from the price. If all this be assumed in favor of the title, the difficulty is left that the plaintiff has failed to reckon with the provisions of the street closing act then in force in the city of New York and with its effect upon easements, private as well as public, belonging to abutting owners. That act, in 1911, was chapter 1006 of the Laws of 1895, which was framed in an endeavor to substitute uniformity and order in the street system of the city for the disorder and diversity prevailing in the past (*Matter of Mayor* [*168th St.*], 157 N. Y. 409). Some of the evils and complications engendered by the new act turned out to be greater than any good to be attained, and it was superseded in 1923 by a statute of that year (Laws of 1923, ch. 752). By the act of 1895, which was still unrepealed in 1911, the streets and public spaces laid out upon a final map, adopted by municipal authorities in accordance with the charter and thereafter duly filed, were thenceforth to be the only streets and public places maintained within the city. All " streets, avenues, roads, highways, alleys,

lanes and thoroughfares " described as discontinued, were from the time of the filing of the map to be regarded as closed. The act defines with precision the consequences of the closing. They include the extinguishment of all easements, private as well as public (*Barber* v. *Woolf*, 216 N. Y. 7), in roads so discontinued. The owner of the fee whose land is thus released, is to be free to " enclose, use and occupy " it to the same extent as if no easements, private or public, had ever been created. Upon the exercise of that right there is one limitation and one only. Such parts of the discontinued thoroughfare " as are included within the boundaries of any square or plot of ground made by the intersection " of any streets or avenues laid out upon the permanent map may not be built upon or inclosed until one of the streets or avenues bounding such square or plot shall have been physically opened (Laws of 1895, ch. 1006; *Matter of City of New York*, 192 N. Y. 459; *Matter of City of New York* [*Newton Avenue*], 219 N. Y. 399, 406). From that time forth they may be occupied at will. On the other hand, the neighboring and abutting owners are not left without a remedy. For any damage done to them by the destruction of their private easements compensation shall be made to them by the city in appropriate proceedings. The period of limitation for the enforcement of such a claim does not begin to run until there has been a physical, and not merely a threatened or possible, interference with the enjoyment of the easements thus declared to be extinguished (*Matter of City of New York* [*Newton Ave.*], 219 N. Y. 399, 406, 407).

The record in this case does not tell us with certainty at what time a street or avenue bounding the plaintiff's block was physically opened. The fair inference is, however, that before the sale in suit, at least two of those streets (*i. e.*, Elliot avenue and Fresh Pond road) and perhaps also a third (Gage place) were open for public travel. At all events, the plaintiff, seeking specific per-

formance, has proved nothing to the contrary, and so, in the aspect of the record most favorable to himself, has left the title at least doubtful. As soon as one of these streets was physically opened, the owner of the fee of the strip between the old and the new line of Fresh Pond road became entitled to build upon it irrespective of any easements previously granted and irrespective of the effect of the obstruction upon the access to the highway available to some one else. The remedy of one so damaged is by a proceeding against the city to make good what he has lost.

We are not unmindful of the fact that in 1922 there was filed by the city a new map of the *locus in quo*, whereby the lines of the Fresh Pond road were re-established as they had existed before the condemnation proceedings in 1911. The filing of such a map did not avail without more to restore extinguished easements in the strip thus marked as a proposed addition to the highway system of the borough. By the hypothesis, title to the strip, free from any easements, was then in Ann Morton or in her successors in interest. It could not be taken away from them except by a new condemnation that would pass the title to the city, and make the land a street again. In such a proceeding, the sum payable by the city to Morton or her successors in order to get the strip back may be subject to an offset to the extent of the assessment for benefits that would be payable by the owners for freeing the land from the burden of the easements if the strip were to be retained.

The complications are too many to justify a holding that the title tendered by the plaintiff is marketable now.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed with costs in the Appellate Division and in this court.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.