In the Matter of the CITY OF NEW YORK (THIRTY-FIRST [PATTERSON] AVENUE, BOROUGH OF QUEENS).

Supreme Court, Queens County, March 13, 1934.

WENZEL, J. The city of New York and twenty-one separate property owners move this court for an order vacating the final decree in the above-entitled proceeding, dated May 12, 1933, and filed June 1, 1933, in the office of the clerk of the county of Queens, in so far as the same relates to the awards therein made for damage parcels 48A, 48B and 48C. The applications by the twenty-one property owners bear date the 7th day of September, 1933. The application by the city of New York bears date December, 1933. By consent all of the applications were heard as one.

A statement of the facts involved in these applications is essential to a discussion of the principles of law applicable.

The above-entitled proceeding was authorized by resolutions adopted by the board of estimate and apportionment. Said resolutions directed that the entire cost and expense of the proceeding be assessed upon the real property within the area of assessment described in said resolutions. An order to condemn the property herein was made on the 11th day of October, 1928.

On the 13th day of December, 1928, the board of estimate and apportionment, deeming it for the public interest and in pursuance of the provisions of the charter of the city of New York, directed that on the 1st day of February, 1929, the title in fee to the real property lying within the damage parcels 48 and 60 in the above-entitled proceeding should vest in the city of New York.

The board of estimate and apportionment on May 5, 1933, adopted a resolution amending the resolutions heretofore referred to and therein directed that twenty-five per cent of the costs and expenses for acquiring title to that part of Thirty-second avenue, Duryeas road and Burnside avenue, extending from Junction boulevard to a line 100 feet east of Eighty-eighth (Thirty-first) street, be placed upon the borough of Queens, and the entire remaining cost and expense to be placed upon the real property in the area of assessment theretofore fixed by said board.

The final decree in this proceeding was dated May 12, 1933, and was filed in the office of the clerk of the county of Queens, on June 1, 1933. Among other things, said decree granted the following awards:

Damage parcel No. 48, owner unknown, land and interest award, eight cents; damage parcel No. 48A, owner unknown, land and interest award, $1,131.15; damage parcel No. 48B, owner Fordbrad Realty Corporation, land and interest award, $42,438.12; damage parcel No. 48C, owner unknown, land and interest award, $502.73.

The damage map originally showed Thirty-second (Burnside) avenue to consist of one damage parcel, but at the request of the attorneys representing the Fordbrad Realty Corporation, the original parcel was subdivided into four distinct parcels known as 48, 48A, 48B and 48C, these four parcels forming a large tract of land acquired by Weisfeld Realty Corporation by deed recorded in the office of the register of the county of Queens on January 6, 1925, in liber 2700 of Conveyances, at page 379.

On or about July 1, 1910, the board of estimate and apportionment adopted section 20 of the final map of the borough of Queens. Shown on this map are various streets, among which is Thirty-second (Burnside) avenue, involved in this proceeding. The street is shown to be eighty feet in width and there are also shown on the map several intersecting streets, namely, Ninetieth (formerly Thirty-third) street, Ninety-first (formerly Thirty-fourth) street and Ninety-second (formerly Thirty-fifth) street.

On or about the 3d day of January, 1925, William Weisfeld Realty Corporation acquired title to the property comprising damage parcels 48, 48A, 48B and 48C, as well as land on both sides adjacent thereto.

On or about the 3d day of January, 1925, one Samuel Sculnick acuqired title from William Weisfeld Realty Corporation to the property on the southerly side of Burnside avenue under a deed containing the following description: Parcel 3. Beginning at the corner formed by the intersection of the southerly side of Burnside avenue with the westerly side of Thirty-fifth street; running thence southerly, along the westerly side of Thirty-fifth street to the old highway; thence westerly along the said old highway to the easterly side of Thirty-third street; thence northerly along the said easterly side of Thirty-third street to the southeasterly corner of said Thirty-third street and Burnside avenue; thence easterly along the southerly side of Burnside avenue to the southwesterly corner of said Burnside avenue and Thirty-fifth street, the point or place of beginning.

On or about the 11th day of September, 1925, Sculnick conveyed to Fordbrad Realty Corporation the property above described by deed recorded in the office of the register of the county of Queens on the 16th day of September, 1925, in liber 2793 of Conveyances, at page 59. It is to be observed that this deed conveys the property south of Burnside avenue in two parcels, as follows:

Parcel B. Beginning at the corner formed by the intersection of the southerly side of Burnside avenue (now known as Thirty-second avenue) with the easterly side of Thirty-third street; running thence southerly along the easterly side of Thirty-third street, about 100 feet to the old highway; thence southeasterly and northeasterly along

the said old highway until the same intersects the westerly side of Thirty-fourth street; thence northerly along the westerly side of Thirty-fourth street to the southwesterly corner of Burnside avenue and Thirty-fourth street; and thence westerly along the southerly side of Burnside avenue, 200 feet to the southeasterly corner of Thirty-third street and Burnside avenue, the point or place of beginning.

Parcel C. Beginning at the corner formed by the intersection of the southerly side of Burnside avenue (now known as Thirty-second avenue) with the easterly side of Thirty-fourth street; running thence southerly along the easterly side of Thirty-fourth street, about 87 feet to the old highway; thence northeasterly along said old highway until said line of the old highway intersects the westerly side of Thirty-fifth street; thence northerly along the westerly side of Thirty-fifth street to the southwesterly corner of Burnside avenue and Thirty-fifth street; thence westerly along the southerly side of Burnside avenue, 200 feet to the southeasterly corner of Thirty-fourth street and Burnside avenue, the point or place of beginning.

Together with all the right, title and interest of the party of the first part in and to any of the land in the streets abutting and adjoining the above premises to the center line thereof and also all the right, title, and interest of the party of the first part in and to Old Bowery Bay road, abutting parcels B and C.

It is to be observed that upon the conveyance to Sculnick by William Weisfeld Realty Corporation, that corporation retained all the frontage on the northerly side of Burnside avenue, between the easterly side of Thirty-third street and the westerly side of Thirty-fifth street, as well as the easterly and westerly frontage on Thirty-fourth street, lying north of Burnside avenue and extending in a northerly direction to the southerly side of Thirty-first (Patterson) avenue. By the deed from William Weisfeld Realty Corporation to Sculnick the grantor, by implication, created easements in favor of the grantee over the whole bed of Burnside avenue at this point comprising the whole of damage parcel No. 48B in the southerly half and the whole of damage parcel No. 48 in the northerly half of the bed of the street.

Should it be held by any construction that the fee to the southerly half of the bed of Burnside avenue (damage parcel No. 48B) passed to Sculnick by this deed, then this deed, by implication, reserved to the grantor easements over the same in favor of the land it retained on the northerly side of and abutting Burnside avenue.

Should it be held, however, that the fee of damage parcel No. 48B passed to Sculnick (said damage parcel being the southerly half of

Burnside avenue), then said damage parcel was also subject to an easement by implication in favor of the remaining land of William Weisfeld Realty Corporation on the northerly side of the street.

It also appears that the William Weisfeld Realty Corporation during the year 1925 erected twenty houses on the northerly side of Burnside avenue, between Thirty-third and Thirty-fifth streets. These were all sold during 1925 and 1926, and by deeds conveying these houses, easements were created in favor of each grantee over all of the land in damage parcels 48 and 48B, being the bed of Burnside avenue. The deeds to the grantees expressly conveyed the fee to the center line of the street, and by implication an easement over the street to the full width thereof. Suffice to say, that all the sales and conveyances were made and had prior (three years) to the vesting of title to damage parcels 48 and 48B in the city of New York.

It is also interesting to note that the William Weisfeld Realty Corporation on the 29th day of May, 1925, executed thirty-two mortgages, twenty of which covered portions of property abutting the northerly side of Burnside avenue. Each of these mortgages expressly and impliedly created easements over the property comprising damage parcels 48, 48B and 48C.

It is contended on this application that the awards to the Fordbrad Realty Corporation for damage parcels 48A, 48B and 48C were made on an erroneous theory, namely, that Fordbrad Realty Corporation was the owner in fee of the southerly one-half of Burnside avenue, free of easements, and that as a consequence it was entitled to a substantial award for the taking thereof.

The William Weisfeld Corporation acquired title to the land comprising damage parcels 48 and 48B, being the bed of Thirty-second (Burnside) avenue, between Ninetieth (Thirty-third) street and Ninety-second (Thirty-fifth) street, together with the lands abutting the same to the north and south. The damage parcels herein were included in the conveyances by means of which William Weisfeld Realty Corporation acquired the property.

The William Weisfeld Realty Corporation sold to Samuel Sculnick that portion of its property abutting the southerly side of Thirty-second (Burnside) avenue, between Ninetieth (Thirty-third) street and Ninety-second (Thirty-fifth) street. The deed to Sculnick contains no additional clause giving the grantee any right, title or interest of the grantor in Burnside avenue.

It is significant to note that in the deed to Sculnick the point of beginning is at the intersection of the southerly side of Burnside avenue with the westerly side of Thirty-fifth street; the termination of the third course " to the southeasterly corner of Thirty-third street and Burnside avenue," and the fourth and inclosing course,

" along the southerly side of Burnside avenue to the point of beginning."

The courts have uniformly held that each of the foregoing material portions of the description here in themselves necessarily exclude from the grant the fee of the street, and further, that such concisely limited and fee grant cannot be extended by implication. (*English v. Brennan*, 60 N. Y. 609; *White's Bank of Buffalo v. Nichols*, 64 id. 65; *Kings County Fire Ins. Co. v. Stevens*, 87 id. 287; *Deering v. Reilly*, 167 id. 184; *Mitchell v. Einstein*, 42 Misc. 358; *Tietjen v. Palmer*, 121 App. Div. 233; *Matter of City of New York*, 209 N. Y. 344; *Kehres v. City of New York*, 162 App. Div. 349; *Stirnweis v. Cacioppo*, 258 N. Y. 68.)

Prior to the date of the conveyance by William Weisfeld Realty Corporation to Sculnick, that corporation owned all the land in the bed of Thirty-second (Burnside) avenue. In the conveyance to Sculnick no rights in and to Burnside avenue were expressly granted, but it is a well-established principle that when a grantor owning the fee to a street sells property bounding the same on such street, such deed creates easements over such street to its full width in favor of the grantee and his successors. The authorities hold that such rule obtains when the street mentioned is non-existent in fact, and merely a proposed street, as well as where the street is already a public highway or where the same is laid out on a property map from which the lots are sold. As between the grantor and grantee, there is an implied covenant that such street exists and that the grantee and his successors shall have an easement over the same.

The grantor is forever estopped from denying the existence of such street or the enjoyment of such easement. There is an implied grant of an easement in favor of the grantee and his successors in interest. (*Matter of City of New York [Carroll St.]*, 137 App. Div. 39; *Matter of City of New York [W. 177th St.]*, 135 id. 520; *Smith v. Smith*, 120 id. 278; affd., 193 N. Y. 667; *Matter of Ninety-fourth Street*, 22 Misc. 32; *Matter of Eleventh Ave.*, 81 N. Y. 436.)

In none of the foregoing cases was the street mentioned a public highway, nor was it shown on any private map from which the property was sold. In most of them the street mentioned was merely a projected or proposed street on the city's plan, as in the case at bar.

The same rule obtains where property so sold is bounded on an existing public street. The cases hold that no distinction can be made on this ground. Private easements are there granted in addition to the public easements already existing. (*Holloway v. Southmayd*, 139 N. Y. 390; *Matter of City of New York [Jerome Ave.]*, 120 App. Div. 297.)

The same rule prevails in cases of sales of land from a property map, which shows the land as abutting on the street. (*Matter of City of New York* [*Northern Blvd.*], 258 N. Y. 136; *Matter of City of New York* [*Hylan (Southside) Blvd.*], 235 App. Div. 806; *Matter of City of New York* [*Sedgwick Ave.*], 213 N. Y. 438; *Matter of City of New York* [*Titus St.*], 152 App. Div. 752; *Lord* v. *Atkins*, 138 N. Y. 184.)

The foregoing cases are definite authority for the creation of the easements in this case. The property was sold with definite and specific reference to Burnside avenue. Three out of the four courses of the description are predicated on Burnside avenue. Its most important point, the starting point, is non-existent without the recognition of Burnside avenue. The only place and the only map on which Burnside avenue was delineated or had any existence was on the map or plan of the city of New York. The grantor, therefore, must have, and did, on this conveyance adopt the map or plan of the city with Burnside avenue, as shown thereon. He could have intended no other. (*Smith* v. *Smith*, 120 App. Div. 278; affd., 193 N. Y. 667; *Matter of Twenty-ninth St.*, 1 Hill, 189.)

Assuming that by any construction that the fee to the southerly side of Burnside avenue passed to Sculnick, easements were reserved in favor of the remaining land held by the William Weisfeld Corporation on the northerly side of Burnside avenue. (*Bissell* v. *New York Central R. R. Co.*, 23 N. Y. 61; *Hennessy* v. *Murdock*, 137 id. 317; *Lord* v. *Atkins*, 138 id. 184, 186; *Matter of City of New York* [*Northern Blvd.*], 258 id. 136.)

The intent of the parties to create easements over Thirty-second avenue by the deed to Sculnick of the property on the south side of Burnside avenue and by the deeds out of William Weisfeld Realty Corporation and its successors, cannot be disputed. In the deed to Sculnick the property was described as fronting on Burnside avenue, as the main and principal front of the property. The parties so regarded it. The description began and terminated there and three of its four courses were with definite reference thereto. The city plan showed it as the principal, definite and permanent future thoroughfare of all those bordering the property. It showed it as wider than any of the other streets. Of the other streets bordering the property, the old highway in the rear was already indicated on the city plan as discontinued and Thirty-fifth and Thirty-third streets were narrower side streets which, like Burnside avenue, were not yet acquired by the city. Burnside avenue was the property's most valuable asset. The property and location indicated a residential development fronting on Burnside avenue and the houses on such street would, of course, have a practical necessity for such development.

Under such circumstances, no grantee would purchase unless an easement passed in Burnside avenue. The circumstances attending the transactions, the peculiar situation of the parties, the state of the country, and the state of the thing granted, all clearly indicate the intention to create such easement. The grantor owned the fee to the whole street. This property on the north abutting the street was entirely improved by it with two-family houses for sale — they all fronted on Burnside avenue. They abutted no street in the rear. The description in all of the deeds refers to Burnside avenue by name and described the property as abutting thereon. In one of the deeds the description concludes with the words, " said premises now being known as and by the street number 9107 Burnside avenue." A clear representation and expression of intention. The inside houses would have no access whatsoever to a highway unless over Burnside avenue. Could any builder hope to sell, or would any buyer purchase, without an easement over the street on which the houses faced? And it is not to be overlooked under the foregoing authorities that easements were created over Burnside avenue to each of the thirty-two mortgages made by William Weisfeld Realty Corporation covering property on the north side of Burnside avenue in May of 1925, which mortgages antedated the conveyances to Sculnick.

By reason of the foregoing, Sculnick's successor in title, Fordbrad Realty Corporation, was entitled to only nominal damages, assuming that it owned the fee and an award for substantial damages was undoubtedly based upon the theory that the fee was unincumbered by easements. (*Matter of City of New York [Decatur St.]*, 196 N. Y. 286; *Matter of Schneider*, 199 id. 581; *Matter of City of New York [Southside Blvd.]*, 235 App. Div. 806; *Matter of City of New York [Clove Ave.]*, Id. 806; *Matter of City of New York [Northern Blvd.]*, 258 N. Y. 136; *Matter of City of New York [W. 177th St.]*, 135 App. Div. 520; *Matter of City of New York [Carroll St.]*, 137 id. 39, 41; *Matter of City of New York [Edgewater Road]*, 138 id. 203; affd., 199 N. Y. 560; *Matter of Opening Hamilton St.*, 144 App. Div. 702; *Matter of City of New York [Titus St.]*, 152 id. 752; *Matter of City of New York [Sedgewick Ave.]*, 213 N. Y. 438.)

The rule laid down in the foregoing cases is clearly set forth by RICH, J., writing for the court in *Matter of City of New York (Carroll St.) (supra)*: " Assuming that the appellant acquired title to the street by her deed, she was, after she conveyed to Breivogel, the owner of the naked fee only. She owns no property abutting on that portion of the street and for that reason is not subject to assessments for benefits. Her fee was subject to the right of ingress and egress over the land in the street, and in view of these facts

a case is not presented in which substantial damages should have been awarded her. The city took from her a naked, unproductive fee, incapable of pecuniary advantage, useless, bereft of enjoyment and incapable of earning, and in the absence of reliable evidence establishing the contrary, the land must as to her be held to have possessed nominal value only."

The power of the court to grant relief in this case has been questioned. Suffice to say, ample authority exists for affording to the petitioners and to the city of New York to grant the relief to which the facts in this case entitled them. (*Matter of City of New York* [*Decatur St.*], 196 N. Y. 286; Civ. Prac. Act, §§ 105, 108; Greater New York Charter, § 994 [added by Laws of 1915, chap. 606, § 2]; *Matter of City of New York* [*Clove Ave.*], 235 App. Div. 806; *Matter of City of New York* [*Southside Blvd.*], Id. 807.)

Since the decision of the Court of Appeals in *Matter of City of New York* (*Decatur St.*) (196 N. Y. 286), the courts of this State have consistently refused to recognize the authority of a substantial award, even where the final decree has been entered, where the naked fee of the street is owned by one subject to easements for street purposes of the abutting owners.

In *Matter of City of New York* (*Decatur St.*) (*supra*, at p. 292), Judge VANN said: " We are unwilling to take part in the division of a fund to which none of the claimants are justly or equitably entitled, so far as now appears. In order that complete justice may be done, we reverse the orders below, without costs to either party, and remit the proceeding to the Special Term with leave to any party or to the city of New York to move to set aside the award and assessment, if any, and for a rehearing before the commissioners, or others to be appointed in their stead."

In *Matter of Schneider* (199 N. Y. 581, at p. 582), after citing *Matter of City of New York* (*Decatur St.*) (*supra*) as authority for the fact that substantial damages were erroneously awarded, the court said: " We think that relief should be sought in the first instance, at least, by an application in the condemnation proceedings to set aside the award and for reduction of assessments, rather than by proceeding in the matter now before us as proposed by the Appellate Division, and that the orders made in this proceeding should be reversed and the proceedings remitted to the Special Term in order to permit of such applications."

As recently as April 15, 1932, *Matter of City of New York* (*Southside Blvd.*) (235 App. Div. 806), and *Matter of City of New York* (*Clove Ave.*) (Id. 807), the Appellate Division, Second Department, sustained the procedure of direct applications by the city of New York to vacate the final decrees, making substantial awards to

persons named therein after the time to appeal had expired. It appeared from the facts in those cases that only nominal awards should have been made because the owner of the property taken had only a naked fee subject to easements for street purposes.

In the case of *Clark* v. *Scovill* (198 N. Y. 279, 286) the court said: " * * * ' the whole power of the court to relieve from judgments taken through " mistake, inadvertence, surprise or excusable neglect," is not limited by section 724 (Code of Civil Procedure); but in the exercise of its control over its judgments it may open them upon the application of any one for sufficient reason, in the furtherance of justice. Its power to do so does not depend upon any statute, but is inherent, and it would be quite unfortunate if it did not possess it to the fullest extent.' * * * ' The power does not depend upon section 724 of the Code, but it exists independently of that, and inheres in the very constitution of the court.' "

In *Herpe* v. *Herpe* (225 N. Y. 323, 327), the court said: " The rule has long been settled and inflexibly applied that the trial court has no revisory or appellate jurisdiction to correct by amendment error in substance affecting the judgment. It cannot, by amendment, change the judgment in matter of substance for error committed on the trial or in the decision, or limit the legal effect of it to meet some supposed equity subsequently called to its attention or subsequently arising. It cannot correct judicial errors either of commission or omission. Those errors are, under our system of procedure, to be corrected either by the vacating of the judgment or by an appeal."

It can be fairly inferred that through neglect or inadvertence the trial court was not apprised of the facts which would have shown that Fordbrad Realty Corporation did not own the damage parcels for which it has had an award and that the title to said damage parcels was but a naked fee, subject to easements in favor of abutting owners.

The final decree should therefore be vacated as to the awards made for damage parcels 48A, 48B and 48C and the proceeding reopened for a redetermination of the awards to be made for damage parcels 48A, 48B and 48C, and to redetermine the assessments levied upon the property within the area of assessment in this proceeding to the extent of the surplus, if any, caused by such redetermination of awards. Settle order on notice.